**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN OVERSIGHT, | |
| *Plaintiff,* | |
| v. | Case No. 17-cv-00727 (RDM) |
| U.S. DEPARTMENT OF JUSTICE *et al.*, | |
| *Defendants.* | |

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S FEE PETITION</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................2

LEGAL STANDARD ..................................................................................................................5

ARGUMENT ..............................................................................................................................6

**I. American Oversight Is Not Eligible For Attorneys' Fees ...............................7**

    A. Plaintiff Did Not Substantially Prevail By The Minute Order of June 12, 2017 ...............8

    B. Plaintiff Did Not Substantially Prevail At The Hearing of July 13, 2017 .......................11

    C. Plaintiff Did Not Substantially Prevail By The Minute Order of August 14, 2017 ..........12

    D. Plaintiff Did Not Substantially Prevail Under The Catalyst Theory ................................13

        i. *This Lawsuit Did Not Catalyze The Disclosure of The Priebus Request Records* ......................13

        ii. *American Oversight Has Failed to Demonstrate that This Lawsuit Was The Catalyst for The Discretionary Release of Portions of The Attorney General's SF-86* .........................................16

**II. American Oversight Is Not Entitled To Attorneys' Fees ...........................19**

    A. No Public Benefit Derived From American Oversight's Requests .....................................20

        i. *Discretionary Releases Related to The Sessions Request Added No New Information to The Public Domain* ...........................................................................................20

        ii. *Documents Released In Response to the Priebus Request Did Not Benefit the Public* ..................22

    B. Defendants' Conduct in this Matter Has Been More than Reasonable .............................23

**III. If The Court Finds That American Oversight Is Eligible For And Entitled To Fees, It Should Award A Significantly Reduced Amount .....................................................28**

    A. Any Fee Award Should Be Discounted for Inefficiencies, Overstaffing, and Other Unreasonable Billing Practices .................................................................................................29

    B. Any Fee Award Should Be Discounted to Reflect Plaintiff's Limited Success .................32

    C. American Oversight is Not Entitled to "Fees on Fees" ......................................................34

CONCLUSION..........................................................................................................................35

# TABLE OF AUTHORITIES

## CASES

*All. For Responsible CFC Policy, Inc. v. Costle,*
   631 F. Supp. 1469 (D.D.C. 1986) .................................................................................13

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.,*
   82 F. Supp. 3d 396 (D.D.C. 2015) ...............................................................................31

*Am. Oversight v. U.S. Dep't of Veterans Affairs,*
   2018 WL 2582793 (D.D.C. June 2, 2018)....................................................................29

*Barnard v. Dep't of Homeland Sec.,*
   656 F. Supp. 2d 91 (D.D.C. 2009) ...............................................................................13

*Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.,*
   136 F.3d 794 (D.C. Cir. 1998) .....................................................................................29

*Bigwood v. Def. Intelligence Agency,*
   770 F.Supp.2d 315 (D.D.C.2011) ........................................................................... 14, 15

*Bloomgarden v. U.S. Dep't of Justice,*
   253 F. Supp. 3d 166 (D.D.C. 2017) ..............................................................................25

*Brayton v. Office of the U.S. Trade Representative,*
   641 F.3d 521 (D.C. Cir. 2011) ............................................................................... 5, 19

*Calypso Cargo Ltd. v. U.S. Coast Guard,*
   850 F. Supp. 2d 1 (D.D.C.2011) ..................................................................................14

*Campaign for Responsible Transplantation v. FDA,*
   511 F.3d 187 (D.C. Cir. 2007) .....................................................................................10

*Center for Biological Diversity v. U.S. Bureau of Land Management*
   No. 10-303, 2011 WL 13185801 (D. Ariz. Feb. 25, 2011) .............................................18

*Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.,*
   11 F.3d 211 (D.C. Cir. 1993) .......................................................................................19

*Church of Scientology v. Harris,*
   653 F.2d 584 (D.C. Cir. 1981) .............................................................................. 6, 16

*CREW v. U.S. Dep't of Justice I,*
   820 F. Supp. 2d 39, 46 (D.D.C. 2011) ..........................................................................22

*CREW v. U.S. Dep't of Justice II,*
  83 F. Supp. 3d 297 (D.D.C. 2015) ............................................................................13

*Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
  272 F. Supp. 3d 49 (D.D.C. 2017) ............................................................................16

*Coffey v. Bureau of Land Mgmt.,*
  2018 WL 2994395 (D.D.C. June 14, 2018).................................................................1

*Comm'r, INS v. Jean,*
  496 U.S. 154 (1990) ..................................................................................................34

*Conservation Force v. Jewell,*
  160 F. Supp. 3d 194 (D.D.C. 2016) ...................................................................*passim*

*Contreras v. U.S. Dep't of Justice,*
  729 F. Supp. 2d 167 (D.D.C. 2010) ..........................................................................10

*Cotton v. Heyman,*
  63 F.3d 1115 (D.C. Cir. 1995) ..................................................................................20

*Cox v. U.S. Dep't of Justice,*
  601 F.2d 1 (D.C. Cir. 1979).................................................................................14, 30

*CREW v. U.S. Dep't of Justice,*
  820 F. Supp. 2d 39 (D.D.C. 2011) ................................................................21, 22, 25

*Davis Cty. Solid Waste Mgmt & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency,*
  169 F.3d 755 (D.C. Cir. 1999) ..................................................................................33

*Davy v. CIA,*
  550 F. 3d 1155 (D.C. Cir. 2008) ..................................................................5, 6, 19, 21

*Davy v. CIA,*
  456 F. 3d 162 (D.C. Cir. 2006) .................................................................................10

*Dep't of Air Force v. Rose,*
  425 U.S. 352 (1976) ..................................................................................................17

*Dorsen v. U.S. Sec. & Exch. Comm'n,*
  15 F. Supp. 3d 112 (D.D.C. 2014) ....................................................................*passim*

*Elec. Privacy Info. Ctr. v. ("EPIC") v. U.S. Dep't of Justice,*
  2016 WL 5818422 (D.D.C. Oct. 5, 2016)..................................................................15

*Envtl. Defense Fund, Inc. v. Reilly,*
  1 F.3d 1254 (D.C. Cir. 1993) .....................................................................................6

*EPIC v. DEA,*
   266 F. Supp. 3d 162 (D.D.C. 2017) ....................................................................34

*EPIC v. DHS I,*
   811 F. Supp. 2d 216 (D.D.C. 2011) .......................................................20, 21, 30

*EPIC v. DHS II,*
   218 F. Supp. 3d 27 (D.D.C. 2016) ....................................................................29

*EPIC v. DHS III,*
   197 F. Supp. 3d 290 (D.D.C. 2016) ..............................................................*passim*

*EPIC v. FBI I,*
   72 F. Supp. 3d 338 (D.D.C. 2014) ...............................................................*passim*

*EPIC v. FBI II,*
   80 F. Supp. 3d 149 (D.D.C. 2015) ........................................................30, 32, 34

*Farrar v. Hobby,*
   506 U.S. 103 (1992) ..........................................................................................33

*Gerhard v. Fed. Bureau of Prisons,*
   258 F. Supp. 3d 159 (D.D.C. July 11, 2017) ..............................................15, 18

*Hall & Assocs. v. U.S. Envtl. Prot. Agency,*
   210 F. Supp. 3d 13 (D.D.C. 2016) .................................................................*passim*

*Harvey v. Lynch,*
   178 F. Supp. 3d 5 (D.D.C. 2016),
   *aff'd sub nom. Harvey v. Sessions,* 2017 WL 4220323 (D.C. Cir. July 14, 2017) ..............................14, 15

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ........................................................................................6, 33

*Jones ex rel. D.T. v. District of Columbia,*
   153 F. Supp. 3d 114 (D.D.C. 2015) ..................................................................35

*Judicial Watch, Inc. v. Dep't of Commerce,*
   470 F.3d 363 (D.D.C. 2006) ..............................................................................33

*Judicial Watch, Inc. v. U.S. Dep't of Justice,*
   878 F.Supp.2d 225 (D.D.C. 2012) .........................................................29, 34, 35

*Judicial Watch, Inc. v. FBI,*
   522 F.3d 364 (D.C. Cir. 2008) .............................................................................9

*McKinley v. Fed. Hous. Fin. Agency,*
   739 F.3d 707 (D.C. Cir. 2014) .........................................................................9, 19

*Mobley v. Dep't of Homeland Sec.,*
    908 F. Supp. 2d 42 (D.D.C. 2012) ............................................................................. 9, 10

*Morley v. CIA,*
    810 F.3d 841 (D.C. Cir. 2016) ................................................................................... 9, 20

*N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau,*
    563 F. Supp. 2d 217 (D.D.C. 2008) ................................................................................ 7

*Nat'l Sec. Counselors v. CIA I,*
    960 F. Supp. 2d 101 (D.D.C. 2013) .............................................................................. 10

*Nat'l Sec. Counselors v. CIA II,*
    189 F. Supp. 3d 73 (D.D.C. 2016) ................................................................................ 10

*Nat'l Sec. Counselors v. CIA,*
    2017 WL 5633091 (D.D.C. Nov. 21, 2017) ................................................................. 15

*Short v. U.S. Army Corps of Eng'rs,*
    613 F.Supp.2d 103 (D.D.C. 2009) ................................................................................ 14

*Simon v. United States,*
    587 F. Supp. 1029 (D.D.C. 1984) ................................................................................. 26

*STS Energy Partners LP v. Fed. Energy Regulatory Comm'n,*
    214 F. Supp. 3d 66 (D.D.C. 2016) ........................................................................... 19, 21

*Summers v. U.S. Dep't of Justice,*
    477 F. Supp. 3d 56 (D.D.C. 2007) ................................................................................ 10

*Tax Analysts v. U.S. Dep't of Justice,*
    965 F.2d 1092 (D.C. Cir. 1992) ........................................................... 19, 23, 24, 25

*CREW v. U.S. Dep't of Justice,*
    820 F. Supp. 2d 39 (D.D.C. 2011) ....................................................................... 21, 22, 25

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press,*
    489 U.S. 749 (1989) ...................................................................................................... 17

*United Am. Fin., Inc. v. Potter,*
    770 F. Supp. 2d 252 (D.D.C. 2011) .............................................................................. 26

*Weisberg v. U.S. Dep't of Justice,*
    745 F.2d 1476 (D.C. Cir. 1984) ............................................................................... 13, 28

**STATUTES**

5 U.S.C. § 552(a)(4)(E) ...................................................................................................... 5, 7, 16

5 U.S.C. § 552(b)(6) ...............................................................................................................17

**OTHER AUTHORITIES**

*AG Sessions did not disclose Russia meetings in security clearance form, DOJ says*, CNN,
   https://www.cnn.com/2017/05/24/politics/jeff-sessions-russian-officials-meetings/index.html
   (last visited July 12, 2018)...........................................................................................................20

*Current Litigation: Enforcing Our Right to Public Information*, American Oversight,
   https://www.americanoversight.org/current-litigation (June 6, 2018)...............................................24

*FBI Refused White House Request to Knock Down Recent Trump-Russia Stories*, CNN,
   https://www.cnn.com/2017/02/23/politics/fbi-refused-white-house-request-to-knock-down-
   recent-trump-russia-stories/index.html (Feb. 24, 2017, 12:19 AM)....................................................23

**INTRODUCTION**

"Although the parties to this Freedom of Information Act litigation may have declared an armistice concerning the release of documents . . . no final peace treaty has been signed.  Indeed, the new battleground is attorney fees."  *Coffey v. Bureau of Land Mgmt.*, No. 16-508, 2018 WL 2994395, at *1 (D.D.C. June 14, 2018).  Just over five months after the filing of this Freedom of Information Act (FOIA) lawsuit, all substantive matters in the case had been resolved.  Processing of both of Plaintiff American Oversight's FOIA requests which were the subject of the Complaint had been completed.  Defendants the Federal Bureau of Investigation (FBI) and the U.S. Department of Justice (DOJ) had explained the limited redactions and withholdings in the case and had described the searches for responsive records that the agencies had conducted.  After just three status conferences – at which the Court adopted Defendants' proposed processing schedules each time – and with no summary judgment briefing or other motions practice, and no substantive argument, the merits of this case came to a close.

American Oversight now – eight months after the completion of the merits stage of this case – asks the Court for nearly *twenty-five thousand dollars* in attorneys' fees and costs, to compensate its attorneys for filing a standard FOIA complaint, and attending three run-of-the-mill status conferences amounting to less than an hour of total in-court time.  The Court should deny this exorbitant request, and instead find that Plaintiff did not substantially prevail in this case, in which Defendants' only legal error was a failure to produce records within the twenty-day statutory deadline, as a result of administrative delays.  The Court should also find that American Oversight has failed to establish the causal nexus required to demonstrate that its lawsuit was the catalyst for the release of records responsive to the two underlying requests; accordingly, the Court should conclude that American Oversight is not eligible for any attorneys' fees.  The Court should additionally determine that Plaintiff is not entitled to any such fees, as its FOIA requests and subsequent litigation did not meaningfully benefit the public, and Defendants behaved eminently reasonably during the course of that litigation.

1

In the alternative, if the Court determines that American Oversight is both eligible for and entitled to attorneys' fees – the two-prong prerequisite to an award of FOIA fees in this Circuit – the Court should substantially reduce the amount of fees awarded.  Such a reduction would account for the inefficiencies and overstaffing reflected in American Oversight's billing, and for the organization's minimal success in this matter.  Finally, the Court should not award "fees on fees" for a case in which Plaintiff has prevailed in neither the substantive nor the fee litigation.

## BACKGROUND

This case arises out of two FOIA requests – dubbed by Plaintiff the "Sessions Request" and the "Priebus Request."  The Sessions Request, a two-part request, was submitted to FBI on March 20, 2017, and the agency acknowledged receipt of it by letter dated April 11, 2017.  *See* Decl. of David M. Hardy ("Hardy Decl.") Ex. D (Sessions Request); *id.* Ex. E (Sessions Request Acknowledgment Letter).  The Priebus Request, a four-part request, was submitted to FBI on March 9, 2017, and the agency acknowledged receipt of it by letter dated March 30, 2017.  *See id.* Ex. A (Priebus Request); *id.* Ex. B (Priebus Request Acknowledgement Letter).  Both Requests sought expedited processing.  *See id.* ¶¶ 8, 11.

On April 19, 2017 – 29 business days after it submitted the Sessions Request, and after FBI had acknowledged receipt of both requests and granted expedited processing as to one of them – American Oversight filed the instant lawsuit to compel a response to those requests.  *See* Compl., ECF No. 1.  On May 24, 2017, Defendants filed an Answer, noting that FBI had granted expedited processing of the Priebus Request on April 18, 2017, and of the Sessions Request on May 4, 2017; accordingly, Defendants contended that Counts I and IV of the Complaint, which challenged the improper denial of requests for expedited processing for both requests, was moot.  *See* Answer ¶¶ 30, 40, ECF No. 8; *id.* at 10 ¶ 1; *see also* Hardy Decl. Exs. C, F.  That same day, the Court set an initial status conference for June 12, 2017, "to discuss the schedule for further proceedings in this matter."  Minute Order of May 24, 2017.

At the June 12th status conference, counsel for Plaintiff agreed that Counts I and IV of the Complaint were moot. *See* Decl. of Cerissa Cafasso ("Cafasso Decl."), ECF No. 23, Ex. E (Tr. Of June 12, 2017 Status Conference ("June 12 Trans.")) at 2:20-21, ECF No. 23-1. Counsel for Defendants represented that FBI had located records responsive to Part 1 of the Sessions Request – seeking a portion of the Attorney General's SF-86 Form – and proposed that the agency complete productions on both parts of the request by July 12, 2017. *See id.* at 5:16-25, 9:4-7. With respect to the Priebus request, counsel for Defendants represented that the agency "will have completed all of the searches for the Priebus request within 30 days," or by July 12. *Id.* at 12:10-14. Plaintiff, however, asked the Court to order that Defendants finish processing Part 1 the Sessions Request by June 23, 2017. *See id.* at 3:9-10. Plaintiff further asked the Court to order that productions as to the Priebus Request "begin on a rolling basis on July 12th with final production by August 11th." *Id.* at 9:23-25. Following that status conference, the Court ordered that (1) Defendants produce all non-exempt records responsive to the Sessions Request by July 12; (2) Defendants complete searches for records responsive to the Priebus Request by July 12; and (3) the parties appear for a further status conference on July 13, 2017. *See* Minute Order of June 12, 2017.

On July 12, Defendants issued a final response to the Sessions Request, withholding in full the sole record responsive to Part 1 of the Sessions Request, pursuant to Exemption 6 of the FOIA. *See* Notice of Production, ECF No. 10. The following morning, Defendants discretionarily released this sole record. *See* Notice of Filing, ECF No. 11.

At the July 13th status conference, counsel for Defendants confirmed that processing of the Sessions Request was complete, and that the agency "decided upon a discretionary release of the responsive record." Cafasso Decl., Ex. F (Tr. Of July 13, 2017 Status Conference ("July 13 Trans.") at 2:21, ECF. No. 23-1. Counsel further represented that the agencies had completed searches as to the Priebus Request and would be able to produce all non-exempt records responsive to two parts of that Request by August 11. *Id.* at 3:1-6. Finally, counsel represented that the parties were working

3

together to narrow the remaining two parts of the Priebus Request, for which an initial search had yielded more than 8,300 potentially responsive items. *Id.* at 3:7-16. Plaintiff's counsel requested that the Court order "a bifurcated summary judgment schedule for just the Sessions FOIA." *Id.* at 4:9-10. Plaintiff's counsel further stated that Defendants should have produced "the signature page" of the Attorney General's SF-86 Form. *Id.* at 11:3-5. Defendants' counsel explained that Defendants had not believed that page was responsive to the request but would consult with FBI and DOJ about whether it could be released. *Id.* at 15:19-22; 16:7. Following the July 13 hearing, the Court issued a Minute Entry noting that "[i]ssues [were] addressed" at the hearing and setting a further status conference for August 14, 2017. *See* Minute Entry of July 13, 2017.

On August 1, 2017, DOJ produced the signature page of the Attorney General's SF-86 to Plaintiff. *See* Cafasso Decl., Ex. G (Tr. Of August 14, 2017 Status Conference ("Aug. 14 Trans.")) at 2:16-22, ECF. No. 23-1. On August 11, 2017, FBI produced all non-exempt records responsive to Parts 1 and 4 of the Priebus Request. *See* Joint Status Report of Sept. 28, 2017 ¶ 2, ECF No. 13. At the August 14th status conference, Plaintiff's counsel noted that Defendants had described their searches for the Sessions Request, and Plaintiff "doesn't see any additional issues with the Sessions request." Aug. 14 Trans. at 2: 21-22. Plaintiff's counsel also informed the Court that Defendants had produced "four pages responsive to item number four [of the Priebus Request] . . . and identified that there were no records responsive to item one" of the Priebus Request. *Id.* at 3:1-7. Counsel represented that "the parties are very, very close to [agreeing on] a production schedule" with respect to Parts 2 and 3 of the Priebus Request, having "agreed to a 90-day production with an interim production at 45 days" but with "one remaining issue" for the Court to decide. *Id.* at 3:13-19. Plaintiff asked the Court to order that Defendants process and produce half of the records potentially responsive to the remaining two parts of the Priebus Request within 45 days, and Defendants asked that they be allowed to complete an interim production of unspecified size within 45 days. *See id.* at 4:5-7, 5:3-4. Later, the Court issued a Minute Entry, ordering that Defendants make an "interim

production" of unspecified volume by September 28 and complete productions on the Priebus Request by November 13, and that the parties submit joint status reports on September 28 and November 21. *See* Minute Entry of Aug. 14, 2017.

On September 28, 2017, Defendants produced to Plaintiff all remaining non-exempt records responsive to Parts 2 and 3 of the Priebus Request, totaling 239 pages in full or with minor redactions, and a single withheld duplicate page. *See* Joint Status Report of Sept. 28, 2017, ¶ 1. The parties jointly proposed to submit a further status report on November 21, 2017, at which time they would propose a schedule for any further briefing in this matter. *Id.* ¶ 7.

On November 21, 2017, the parties submitted a Joint Status Report informing the Court that no further substantive briefing would be required in this case. After the parties attempted, unsuccessfully, to negotiate the issue of attorneys fees over the course of several months, Plaintiff filed the instant motion for fees on June 19, 2018. *See* Joint Status Reports, ECF Nos. 14-17; Fees Petition ("Fees Pet."), ECF No. 23.

## LEGAL STANDARD

FOIA's fee provision states that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any [FOIA] case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This language "naturally divides the attorney-fee inquiry into two prongs"—"eligibility" and "entitlement." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation omitted). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Id.* (citation omitted). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* (emphasis in original).

In regard to the entitlement analysis, this Circuit has recognized that FOIA's attorney fee provision "was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold." *Davy v. CIA*, 550 F. 3d 1155, 1158 (D.C.

Cir. 2008) (citation omitted).   Instead, the provision has "a more limited purpose—to remove the incentive for administrative resistance to disclosure requests" when such resistance is based solely on the knowledge "that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation."   *Id.* (citation omitted).   Ultimately, the decision on whether a plaintiff is entitled to attorneys' fees "rests in the sound discretion of the district court." *Church of Scientology v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981).

If the Court finds that a plaintiff is eligible for, and entitled to, attorneys' fees, it must determine a reasonable amount of fees.   An appropriate starting point is typically the lodestar, a reasonable number of hours multiplied by a reasonable hourly rate.   *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   However, as a decision to award fees is discretionary, a court "may deny in its entirety a request for an outrageously unreasonable amount, lest claimants feel free to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Envtl. Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (citation and internal punctuation omitted).   If overbilling is less egregious but still unreasonable, the Court "may impose a lesser sanction, such as awarding a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request." *Id.* (citation omitted).

## **ARGUMENT**

Defendants urge the Court to deny the pending motion for fees, as American Oversight is neither eligible for nor entitled to attorneys' fees in this matter.   Because the case concluded without any summary judgment or other substantive briefing, the only judicial relief Plaintiff received in this matter took the form of Minute Orders and status hearings.   Yet American Oversight did not "substantially prevail," within the meaning of the FOIA fees provision, by any of the Court's minute entries or at any of the status hearings—all of which resulted in the Court's approval of the processing schedules Defendants were already employing for both of Plaintiffs' FOIA requests.   Nor has

American Oversight successfully demonstrated that its lawsuit was the catalyst for the release of documents responsive to either the Sessions Request or the Priebus Request. Accordingly, Plaintiff is not eligible for attorneys' fees in this matter. And, even if American Oversight meets the eligibility threshold, it is not entitled to fees in this case—where neither request yielded any useful new information or other public benefit, and where Defendants behaved reasonably while processing and litigating issues related to both requests.

Alternatively, if the Court finds that American Oversight clears both the eligibility and entitlement hurdles, it should substantially reduce the amount of fees awarded, to counteract American Oversight's inefficient billing practices – including overstaffing and overbilling of routine, uncomplicated tasks attendant to any FOIA matter – and to account for Plaintiff's very limited success in this matter. The Court also should not award "fees on fees"; if, however, the Court decides to do so, it should carefully scrutinize any bill of "fees on fees" Plaintiff eventually submits or allow Defendants to file a sur-reply challenging that bill.

## I.   AMERICAN OVERSIGHT IS NOT ELIGIBLE FOR ATTORNEYS' FEES

In order to establish eligibility, a plaintiff must show that it has "substantially prevailed" by obtaining either (1) "a judicial order, or an enforceable written agreement or consent decree" or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The second of these two options "essentially codifies the so-called 'catalyst theory'" of recovery, under which a plaintiff is eligible for fees if the "litigation substantially caused the requested records to be released." *N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008) (citation omitted).

Here, American Oversight attempts to show that it "substantially prevailed" through "multiple" judicial orders, *see* Fees Pet. at 6 (citation omitted), as well as under the catalyst theory. As discussed below, the Court should reject each of these attempts.

### a.   Plaintiff Did Not Substantially Prevail By The Minute Order of June 12, 2017.

In order to substantially prevail based on court-ordered relief, a FOIA plaintiff must show that the court's order "create[d] a judicially sanctioned change in the legal relationship of the parties." *Hall & Assocs. v. U.S. Envtl. Prot. Agency*, 210 F. Supp. 3d 13, 20 (D.D.C. 2016) (internal quotation omitted), *aff'd*, 2018 WL 1896493 (D.C. Cir. Apr. 9, 2018).   Minute Orders are the only directives that might qualify as court-ordered relief in a case like this one, which lacked any substantive briefing or Memorandum Opinions, *see* Fees Pet. at 6, and Defendants will discuss each in turn.

To begin, the Court's June 12 Minute Order, issued after the parties' initial pleadings, adopted in full DOJ's processing proposal.   *See* Minute Order of June 12, 2017 ("With respect to the 'Sessions' FOIA request, Defendants shall produce any responsive documents that are not subject to a FOIA exception or exemption on or before July 12, 2017. With respect to the 'Priebus' FOIA request, Defendants shall complete their searches for any responsive documents, absent a showing of good cause, on or before July 12, 2017.").   Defendants proposed to the Court that they would produce all records responsive to the Sessions Request by July 12, and that they would complete the searches for records responsive to the Priebus request by July 12—*i.e.*, precisely what the Court ordered.   *See* June 12 Trans. at 3:4-10 ("Cafasso: DOJ's proposal is that they produce [records responsive to the Sessions Request] by July 12th.   American Oversight has countered . . . that FBI make a decision and production by June 23rd."); *id.* at 12:16-22 ("The Court:   But by July 12th, though, the goal [for the Priebus Request] is simply to have located potentially responsive documents . . .?  . . . Ms. Motgi: "That's right.").   The Court adopted the Government's proposed schedule in its July 12th Minute Order after hearing that FBI had already located all records responsive to the Sessions Request and was engaged in high-level consultations about the production or withholding of such records, consultations which FBI anticipated would be completed by July 12; and that Defendants had already begun searching for records responsive to the Priebus Request, searches which the Government anticipated would be completed by July 12.   In short, the Court adopted the approach Defendants were already taking to the two Requests at issue in this case, over the repeated objections of Plaintiff's counsel.

Some courts have held that a scheduling order may be sufficient to satisfy FOIA' eligibility prong.  *See Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 369 (D.C. Cir. 2008).  Recently, however, courts in this Circuit have held that "such a court order is a necessary, but not sole criterion for finding that [the plaintiff] is a prevailing party" because the scheduling order alone does not establish that the plaintiff has "*substantially*" prevailed.  *Hall & Assocs.*, 210 F. Supp. 3d at 20; *cf. Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012) (recognizing that the court's ruling on whether a FOIA plaintiff substantially prevailed must "give meaning to the language"—including the word "substantially"—"used in the statute").  The court in *Hall* concluded that the plaintiff did not substantially prevail, despite a court order directing the agency to provide responsive records by a certain date, because the plaintiff could have obtained the same result without the court's involvement. 210 F. Supp. 3d at 21.  The same is true here; Plaintiff has not demonstrated that, had it simply allowed Defendants to continue processing its requests, which had only been submitted a short amount of time before Plaintiff filed suit, Defendants would not have completed their processing of the Sessions Request by July 12 and their searches for the Priebus Request by the same date.  Plaintiff therefore has not established that the June 12th Minute Order was necessary to compel the result here.

Furthermore, the result of the June 12 Minute Order with respect to the Sessions Request was the withholding of a sole record (with respect to Part 1 of that request, seeking a portion of the Attorney General's SF-86) and the determination that there were no records responsive to the remainder (Part 2, seeking interview notes and records) of the request.  And the discretionary release of the sole Part 1 record merely revealed information the substance of which the Department of Justice had previously disclosed to the public.  Courts have held that a FOIA plaintiff has not substantially prevailed where it receives nothing of substance in response to its request—whether no records at all, heavily redacted records, or records that were already public.  *Cf. Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 174 (2016) (recognizing that unless "the litigation has caused the release of requested documents," a plaintiff "cannot be said to have substantially

prevailed"); *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014) (citing district court's question whether releasing "two heavily redacted documents" in response to a court order "amount[ed] to 'substantially prevailing'"(citation omitted)); *Nat'l Sec. Counselors v. CIA II*, 189 F. Supp. 3d 73, 79 (D.D.C. 2016) (plaintiff "did not prevail on the second FOIA request, as [the agency] searched but found no responsive records"); *Nat'l Sec. Counselors v. CIA I*, 960 F. Supp. 2d 101, 146–47 (D.D.C. 2013) (observing that "it is totally implausible that 'a requester seeking already disclosed records' would ever substantially prevail in a FOIA lawsuit"(citation omitted)); *Mobley*, 908 F. Supp. 2d at 48 ("[T]he fact that the plaintiffs received no documents, despite the fact that the defendant processed their request, militates against a conclusion that the plaintiffs substantially prevailed").

And, with respect to the Priebus Request, it is well settled that an order to search, by itself, does not constitute substantial relief on the merits. The D.C. Circuit has held that an order to conduct a search is "'procedural . . . as opposed to substantive.'" *Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 196 (D.C. Cir. 2007) (quoting *Davy*, 456 F. 3d at 165); *see also Summers v. U.S. Dep't of Justice*, 477 F. Supp. 3d 56, 66-67 (D.D.C. 2007) (holding that court order "directing [the defendant agency] to file an affidavit indicating its efforts to locate a missing file" did not qualify as substantive relief). A search in and of itself cannot qualify as "relief on the merits" in a FOIA case because a claim under the FOIA is necessarily a claim for the release of documents improperly withheld. *Nat'l Sec. Counselors*, 189 F. Supp. 3d at 79; *Contreras v. U.S. Dep't of Justice*, 729 F. Supp. 2d 167, 169 n. 3 (D.D.C. 2010) (noting that "injunctive relief is only available [under FOIA] to remedy an agency's improper withholding of information"); *cf.* Compl. ¶¶ 60-65 (Count II) (asserting that "failure to conduct adequate search for records responsive to Priebus FOIA" violates the FOIA).

Accordingly, any victory that American Oversight obtained via this Court's June 12 Minute Order was at best minimal, rather than "substantial." By the time the Court issued this Minute Order adopting Defendants' proposed schedule, processing of the Sessions Request was near completion, and FBI was already engaged in searches for records responsive to the Priebus Request. The former

Request yielded, with regard to Part 1, the *discretionary* release of a single, redacted page whose contents had been previously disclosed and whose disclosure was not ordered by the Court and, with regard to Part 2, no responsive records whatsoever.  The Court therefore should conclude that Plaintiff did not substantially prevail pursuant to the July 12th Minute Order.

**b.  Plaintiff Did Not Substantially Prevail At The Hearing of July 13, 2017.**

Following the July 13 status conference, the Court issued a Minute Entry noting that "[i]ssues [were] addressed" at the July 13 hearing, and that a further status conference would be set for August 14, 2017.  *See* Minute Entry of July 13, 2017.  This did not "create[] a 'judicially sanctioned change in the legal relationship of the parties'" to American Oversight's benefit.  *Hall & Assocs.*, 210 F. Supp. 3d at 20 (citation omitted).  And while the Court did address various issues in the case at the hearing, none of them constituted a legal order to produce anything by a particular date.  Instead, Defendants represented that they would produce all non-exempt records responsive to two parts of the Priebus Request within 30 days and would continue to negotiate with Plaintiffs about narrowing and processing the remainder of that Request.  The Court then set a further status conference "just to keep things on track."  *See* July 13 Trans. at 10:3-5; *see also id.* at 23:22-25 – 24:1 ("[A]t that status conference, what I'd like to be able to discuss is where we stand with respect to scheduling on the Priebus materials and whether we need to set a further schedule with respect to the Priebus materials.").  In other words, the Court asked Defendants to continue doing what they were already doing: processing the Priebus Request and negotiating with Plaintiff.[1]  This hardly constitutes

---

[1] At the July 13 hearing, counsel for Plaintiff also represented that it believed Defendants had improperly withheld the signature page of Attorney General Sessions's SF-86.  Counsel for Defendants explained that Defendants had not believed that page was responsive.  The Court then asked that counsel "go back and confer with your client about" whether Defendants could release the signature page," *see* July 13 Trans. at 15:6-11, but did not order Defendants to produce – or state that it would withhold – the page by a date certain or at all.  As the Court predicted, the signature page was "a non-issue," *id.* at 15:6, since Defendants produced it on August 1, 2017.  *See* Aug. 14 Trans., at 2:16-18.  There is no dispute that this production was not the result of a Court order.  Nor is there any dispute that Defendants "would not have violated the Court's order if they had refused to produce any documents at all" pertaining to the signature page, meaning that the Court's instructions at the

substantially prevailing. *See Hall & Assocs.*, 210 F. Supp. 3d at 20.

### c. Plaintiff Did Not Substantially Prevail By The Minute Order of Aug. 14, 2017.

The only remaining judicial order on which American Oversight could hang its contention that it substantially prevailed in this litigation through a court-ordered change in relationship is the Minute Order of August 14, 2017. That Minute Order followed a hearing earlier the same day and directed the parties to submit a Joint Status Report by September 28, 2017. It further ordered that the "Department of Justice shall make an interim production on or before 9/28/2017, with completion of production by 11/13/2017," and directed that the parties submit a further Joint Status Report, with a proposed schedule for summary judgment briefing, if necessary, on November 21, 2017. *See* Minute Order of August 14, 2017. This order tracked the schedule separately negotiated by the parties without any Court involvement or oversight. *See* Aug. 14 Trans. at 3:18-19 (Plaintiff's counsel explaining, with respect to Parts 2 and 3 of the Priebus Request, that the parties have "agreed to a 90-day production with an interim production at 45 days"). Both counsel for Plaintiff and counsel for Defendants represented at the hearing that "the only point of disagreement . . . is what will be complete at the 45-day mark." *Id.* at 5:1-3. Plaintiff asked the Court to order that Defendants process half of the potentially responsive records by the 45-day mark, while FBI stated that it "has committed to producing *some* responsive records by the 45-day mark[, but] it's difficult for the agency to commit to a production that represents half[.]" *Id.* at 5:3-6. The Court declined to order that Defendants process half of the potentially responsive records at the 45-day mark and instead adopted the schedule to which FBI had already committed -- *viz.*, an interim production of unspecified size on September 28, 2017, and a final production of all remaining, non-exempt responsive records on November 13, 2017. *See* Minute Order of August 14, 2017. Separately, the Court also rejected American Oversight's proposal that these deadlines be imposed at 5:00 p.m., instead of the traditional 12:00 a.m. deadlines. *See* Aug. 14 Trans. at 7:14-15 ("The Court: I don't think we need to set a particular time of day.").

---

hearing with regard to the signature page do not constitute judicial relief on the merits. *See Conservation Force*, 160 F. Supp. 3d at 204.

Thus, the only issue the parties had raised for the Court to decide at the August 14th hearing – what Plaintiff's counsel described as "the open question that we had before the Court today" – was decided in Defendants' favor, when the Court endorsed the schedule to which Defendants had already committed.[2] *See* Aug. 14 Trans. at 8:19-20. Courts in this Circuit have repeatedly rejected the notion that an order like this one, which "permit[s] [the agency] to choose between" various options, (here, how much to produce in an interim production), qualifies as judicial relief on the merits. *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 (D.D.C. 2016); *see also Barnard v. Dept. of Homeland Sec.*, 656 F. Supp. 2d 91, 99 (D.D.C. 2009) ("Because Defendant was given the *option* [in the court's order] of releasing the records or preparing a *Vaughn* index," the order did not provide substantive relief that made the plaintiff eligible for attorney's fees (emphasis added)). Neither the Minute Order of August 14, 2017, nor the Court's directions at the hearing on the same day, therefore constitute matters on which Plaintiff "substantially prevailed."

### d. Plaintiff Did Not Substantially Prevail Under The Catalyst Theory.

The catalyst theory asks "whether plaintiff's lawsuit was necessary for its attainment of the requested documents." *Citizens for Responsibility & Ethics in Washington* ("*CREW*") *v. U.S. Dep't of Justice*, 83 F. Supp. 3d 297, 304 (D.D.C. 2015). "[T]he catalyst analysis is all about causation, and it is [the plaintiff's] burden to show that the necessary causal nexus exists." *Conservation Force*, 160 F. Supp. 3d at 205. Of course, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984). Rather, "[c]ourts must consider other factors, such as whether the agency made a good faith effort to discover and disclose material, whether the scope of the request caused a delay in disclosure, and whether the agency was burdened by other duties that delayed its response." *All. for Responsible*

---

[2] The Court directed Defendants to "get back to Ms. Cafasso and tell her what it is that you're proposing to do and what you believe you can do within the 45 days," and told Ms. Cafasso to contact the Court to schedule a further status conference should she "conclude that it's unacceptable." Aug. 14 Trans. at 10:20-11:3. Because Plaintiff did not object to Defendants' proposal, no further status conference was necessary.

*CFC Policy, Inc. v. Castle*, 631 F. Supp. 1469, 1470 (D.D.C. 1986).

     *i.   This Lawsuit Did Not Catalyze The Disclosure of The Priebus Request Records.*

     "As many judges within this circuit have recognized, 'the causation requirement is missing when disclosure results not from the suit but from delayed administrative processing.'" *Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C. 2016), *aff'd sub nom. Harvey v. Sessions*, No. 16-5200, 2017 WL 4220323 (D.C. Cir. July 14, 2017) (citing *Short v. U.S. Army Corps of Eng'rs*, 613 F.Supp.2d 103, 106 (D.D.C. 2009)); *see also Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d 1, 5 (D.D.C.2011) (denying fees where agency "had already begun coordinating and processing the plaintiffs' request before plaintiffs filed their lawsuit"); *Bigwood v. Def. Intelligence Agency*, 770 F.Supp.2d 315, 321 (D.D.C.2011) (same); *cf. Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979) ("If rather than the threat of an adverse court order . . . an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit.").

     In *Harvey*, this Court declined to adopt a *per se* rule "that an award of costs should be virtually automatic" whenever an agency makes no substantive determination or release until after a FOIA requester files suit. *Harvey*, 178 F. Supp. 3d at 8. The Court noted that such "a strict-liability rule for agencies that miss the 20-day FOIA deadline" would be "both unnecessarily harsh and potentially quite expensive." *Id.* (citing *Cox*, 601 F. 2d at 6). Yet this is precisely the rule that American Oversight asks the Court to adopt in this case with respect to the Priebus Request. And it is unwarranted here. Defendants had already begun searching for responsive records at the time this lawsuit was filed, and had already granted expedited processing of this request before the first status conference. *See* Hardy Decl. ¶¶ 8, 11, 13, 14. Defendants subsequently produced all remaining records responsive to the Priebus Request by September 28, 2017. *See* Joint Status Report of Sept. 28, 2017. Thus, without the Court ever ordering that Defendants process a certain number of pages or produce a certain number of records by a certain date – and instead endorsing the processing schedule that Defendants were

already using – Defendants completed processing within six months of receipt of the Priebus Request, having provided updates to Plaintiff regarding completion of searches and interim productions.

As the Court in *Harvey* explained, "an unusually long delay might give rise to the inference that the agency forgot about, or sought to ignore, a FOIA requester's request—and in such a case an award of costs and fees would be appropriate." *Harvey*, 178 F. Supp. at 8. But this, like *Harvey*, is not such a case. Plaintiff has presented no evidence demonstrating that Defendants forgot about or sought to ignore the Priebus Request. On the contrary, FBI and DOJ had already begun performing searches of the request at the time this lawsuit was filed, and agency staff had in fact met about both requests "and had developed a processing strategy for both which was already being implemented at the time Plaintiff filed its lawsuit." Hardy Decl. ¶ 14; *see also id.* ¶ 15; *cf. Harvey*, 178 F. Supp. at 8 (no catalyst theory established where defendant-agency "provided 'a detailed timeline of events leading up to the disclosure of information,' that largely, if not completely, refutes any claim" that agency was "prompted to action by [Plaintiff's] lawsuit" (quoting *Bigwood*, 770 F. Supp. 2d at 321)).

American Oversight has not provided the Court with any indication that Defendants' inability to complete processing of the Priebus Request by the 20-day statutory deadline was anything other than the result of simple administrative backlog—rather than "an intransigence that only fell away in the face of litigation." *Conservation Force*, 160 F. Supp. 3d at 206-07. There is no indication that the agency "delayed or refused to provide the requested document[s]" in the Priebus Request. *Elec. Privacy Info. Ctr. v.* ("*EPIC*") *v. U.S. Dep't of Justice*, No. 15-cv-1955, 2016 WL 5818422, at *2 (D.D.C. Oct. 5, 2016) (reasoning that DOJ had worked diligently to process the request from the time it was received until the records were released, and the short time period between the submission of the request, the filing of plaintiff's lawsuit, and the agency's release undermined the notion that the lawsuit was "causally related" to the release). And here, no further briefing, status hearings, or orders were required to resolve any disputes or compel any further action from Defendants after they had completed processing of the Priebus Request.

Accordingly, this case is like many others in which courts have held that "the release of documents after litigation is initiated does not establish eligibility [because] an agency's administrative backlog caused the delay in processing, defeating a plaintiff's claim of 'substantially prevailing' under the catalyst theory." *Nat'l Sec. Counselors v. CIA*, No. 11-444, 2017 WL 5633091, at *8 (D.D.C. Nov. 21, 2017); *Gerhard v. Fed. Bureau of Prisons*, Civ. No. 16-1090, 2017 WL 2958603, at *5 (D.D.C. July 11, 2017); *Dorsen v. U.S. Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 120 (D.D.C. 2014)); *see also Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 272 F. Supp. 3d 49, 54 (D.D.C. 2017) ("For example, an agency's delay in response until after a lawsuit is filed may be the result of factors having nothing to do with the filing of the lawsuit but instead with administrative delays due to backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity of inter-agency searches and responses, or a combination of these factors.").

As Mr. Hardy explains, "[t]he volume of FOIA litigation and litigation-related processing of FOIA requests that FBI is currently handling is at an all-time high," and "the complexity of the requests and volume of pages in the FBI's FOIA backlog" have also increased dramatically in recent years; this "administrative backlog" alone – not any obduracy, recalcitrance, bad faith or other malfeasance – "rendered FBI unable to respond substantively to Plaintiff's request within the statutorily mandated timelines." *See* Hardy Decl. ¶ 15.  In sum, "while it is true that Defendants released some documents after [Plaintiff] filed the complaint as a purely chronological matter, it is also clear beyond cavil that the catalyst method requires more.  No averments or other facts in the instant record indicate that Defendants only produced these documents *because* of [the] lawsuit or its necessary consequents." *Conservation Force*, 160 F. Supp. 3d at 206.

> ii.   *American Oversight Has Failed to Demonstrate that This Lawsuit Was The Catalyst for The Discretionary Release of Portions of The Attorney General's SF-86.*

Plaintiff points to nothing beyond the mere fact of FBI's discretionary release of the SF-86 and signature page as evidence that its "lawsuit was plainly the 'catalyst' that caused Defendants to release these records."  Fees Pet. at 8.  Yet, if every discretionary disclosure after the filing of a

complaint were sufficient to establish eligibility for fees under the catalyst theory, federal agencies would have no incentive to voluntarily disclose records.  Here, moreover, Plaintiff has provided no additional evidence to suggest that "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation" via voluntary disclosure. *Church of Scientology*, 653 F.2d at 587.  And although a "voluntary or unilateral change in position by the agency" may render the plaintiff a prevailing party, *see* 5 U.S.C. § 552(a)(4)(E) (i)(II), the fact of such a change is not alone sufficient to establish eligibility for fees; a "causal nexus" is required.  *Gerhard v. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 165 (D.D.C. 2017).  This nexus typically requires that a plaintiff establish that (1) the action was reasonably necessary to obtain the information and (2) the action had a substantial causative effect on the agency's release of the information at issue.  *Id.*

American Oversight relies heavily on *Dorsen v. U.S. Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112 (D.D.C. 2014), for the proposition that an agency's voluntary disclosure of records previously withheld under a statutory exemption renders a requester eligible for fees.  But in *Dorsen*, the defendant agency argued that a pending administrative appeal might have overturned its determination that the withheld records were protected from disclosure by Exemption 5, and the Court held that "[t]he defendant cannot simultaneously argue that the documents would have been released in response to the plaintiff's appeal, *and* assert that the records were exempt from disclosure and, thus, were reasonably withheld." 15 F. Supp. 3d at 120.  Here, however, Defendants have never implied that the portion of the SF-86 identified in the Sessions Request was not properly withheld under Exemption 6.  On the contrary, the agency maintains that its withholding in the first instance was proper, *see* Hardy Decl. ¶ 13, and American Oversight has never suggested otherwise.

Moreover, the Court in *Dorsen* relied heavily on "the close proximity in timing between the filing of the lawsuit and the release of responsive records," *see* 15 F. Supp. 3d at 119, as the defendant agency there issued a voluntary release a mere eight days after the filing of that lawsuit, notwithstanding its prior position at the administrative stage.  Here, by contrast, DOJ did not take a substantive position

17

at the administrative stage, because the litigation commenced before a substantive response was issued to the Sessions Request. And during the litigation, FBI's processing of that request followed a singular course: the agency first determined that the record was properly withheld under Exemption 6, and then later made a discretionary release notwithstanding that determination—but did not undermine or reverse that determination. Nor did DOJ's discretionary release follow a Court order or hearing, or a substantive filing by Plaintiff.[3]

And Exemption 6 is qualitatively different than Exemption 5, which was at issue in *Dorsen*; it "protects . . . files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(b)(6)). In that provision, "Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the" FOIA, *see Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976), but even if that balance tips in favor of privacy, an individual whose personal information is at issue may opt to waive his or her rights to protect that information from disclosure. Such a decision as to voluntary release is separate in time and different in kind from the determination that Exemption 6 applies in the first instance.

As Mr. Hardy's declaration reveals, FBI and DOJ worked diligently to respond to Plaintiff's request from the moment it was received until the date the lawsuit was filed—29 days after receipt of the Sessions Request. *See* Hardy Decl. ¶ 14 ("[T]he FBI had already begun working on both requests at the time Plaintiff filed suit. Specifically, the FBI conducted preliminary searches for responsive records for the Priebus request on March 27, 2017," less than twenty business days after its submission, "and for the Sessions request on April 7, 2017[,]" also less than twenty business days after

---

[3] Nor was Defendants' discretionary disclosure of the "Signature Page" of the Attorney General's SF-86 a disclosure on which Plaintiff "substantially prevailed." For where a "Defendant's delay in disclosing the requested records was due to . . . a misunderstanding about the nature of the request," but "Defendant never refused to produce the information or argued that the documents requested were FOIA exempt," courts conclude that the disclosure alone does not "provide[] sufficient evidence indicating that filing the suit was necessary or that filing the suit had a substantial causative effect on the release of the requested information." *Center for Biological Diversity v. U.S. Bureau of Land Management*, No. 10-303, 2011 WL 13185801, at *6 (D. Ariz. Feb. 25, 2011).

its submission).  As counsel for Defendants noted at the initial status conference – before this Court had issued any rulings in the matter – Defendants were already engaged in high-level consultations around whether any statutory exemptions protected records responsive to the first part of the Sessions Request.  *See* June 12 Trans. at 6:3-9 ("As plaintiffs have acknowledged in the request itself, it potentially implicates the privacy interests of the Attorney General as well as other individuals.  So the nature of the request at issue requires more than just identifying the responsive documents and then moving them through the production line.").  Defendants subsequently determined that Exemption 6 protected Attorney General Sessions's SF-86 from disclosure, but later, after consultations with the Office of the Attorney General itself, determined to voluntarily release the sole record responsive to the Sessions Request.  *See* Hardy Decl. ¶ 13.  Only the former determination – the substantive response to the Sessions Request – was required to comply with the court's June 12 Minute Order.  The latter determination – the discretionary release – was made without any Court order and without any link to a motion or argument made by Plaintiff.  Accordingly, American Oversight cannot show a "causal nexus" between its lawsuit and the voluntary release of portions of Attorney General Sessions's SF-86.  *Gerhard*, 258 F. Supp. 3d at 165; *see also, e.g.*, *Center for Biological Diversity*, 2011 WL 13185801, at *6-*7 (concluding, notwithstanding agency's "discretionary release of exempt information" during the pendency of the litigation, that plaintiff had not substantially prevailed under catalyst theory).

## II.  AMERICAN OVERSIGHT IS NOT ENTITLED TO ATTORNEYS' FEES

In order to receive a fee award in this case, American Oversight would not only have to show eligibility for attorney's fees, but it would also have to satisfy the criteria for entitlement to fees.  To assess a plaintiff's entitlement, courts in this Circuit evaluate four "non-exclusive" criteria: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."  *McKinley*, 739 F.3d at 711 (citation omitted).  "The sifting of those criteria over the facts of a case is a matter of district court discretion."  *STS Energy Partners LP v. Fed. Energy*

*Regulatory Comm'n*, 214 F. Supp. 3d 66, 68-69 (D.D.C. 2016) (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992)).

Typically, "entitlement is determined under a balancing of [these] four factors[.]" *Dorsen*, 15 F. Supp. 3d at 120. However, "in some circumstances[,] the final factor may be dispositive. Specifically, the D.C. Circuit has made clear that 'if the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable bases in law, that will be weighed along with other relevant considerations in the entitlement calculus.'" *Id.* at 121(citing *Davy*, 550 F. 3d at 1162); *see also Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993). This principle is consistent with the Circuit's "'long-established rule of never granting a fee award to a plaintiff whose FOIA claim was incorrect as a matter of law.'" *Dorsen*, 15 F. Supp. 3d at 121 (quoting *Brayton*, 641 F.3d at 526). As discussed below, none of the four factors favors a fee award under the circumstances of this case.

### a. No Public Benefit Derived From American Oversight's Requests.

#### i. *Discretionary Releases Related to The Sessions Request Added No New Information to The Public Domain.*

American Oversight argues that extensive coverage of Defendants' voluntary release of a portion of Attorney General Sessions's SF-86 Form indicates that it was "of clear public benefit." Fees Pet. at 12. Even assuming that the discretionary release of a single question from that SF-86 Form could be attributed to this litigation, it cannot be said to have *benefited* the public, for its contents had already been disclosed by the Department. Before this Court had held any hearing or entered any order regarding the production or processing of Attorney General Sessions's SF-86, DOJ had already made a public, official statement about, as the Court noted, "what was actually included or not included in the SF-86 on that issues[.]" June 12 Trans. at 7:12-14; *id.* at 17:1-3 ("The Court: What is the urgency of [processing the request for the Attorney General's SF-86] given the fact that the Department has already made an official announcement about what's in the document?"); *see also* Manu Raju & Evan Perez, *AG Sessions did not disclose Russia meetings in security clearance form, DOJ says,*

CNN, May 25, 2017, https://www.cnn.com/2017/05/24/politics/jeff-sessions-russian-officials-meetings/index.html (last visited July 12, 2018) (DOJ spokesperson Ian Prior explaining that "[i]n filling out the SF-86 form, the Attorney General's staff . . . was instructed not to list meetings with foreign dignitaries and their staff connected with his Senate activities[,]" including Russian government contacts).  This and other articles explain that the DOJ press statement followed publicity over the Attorney General's confirmation hearings, at which his contacts with foreign government officials were discussed, and the announcement was therefore unrelated to the instant litigation.

It is well settled that a request has no potential public value where the information sought is "already in the public domain." *EPIC v. FBI I*, 72 F. Supp. 3d 338, 346 (D.D.C. 2014)(citation omitted); *accord EPIC v. U.S. Dep't of Homeland Security* ("*EPIC v. DHS I*"), 811 F. Supp. 2d 216, 234 (D.D.C. 2011); *see also Morley*, 810 F.3d at 845 (explaining that when information is "already in the public domain[,]" that "undermines any claim that the requester's use of FOIA had provided public access" to that information).  Nor is it sufficient that records released as a result of litigation marginally increase the "knowledge of [the] government" that inevitably accompanies "the release of any government document[.]"  *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995).  Rather, to have "potential public value," the FOIA request "must have at least a modest probability of generating useful *new information* about a matter of public concern."  *Morley*, 810 F.3d at 844 (emphasis added); *see also Cotton*, 63 F.3d at 1120 (noting that public benefit factor favors plaintiff only if release of requested information "is likely to add to the fund of information that citizens may use in making vital political choices" (citation omitted)).  Information that duplicates, in substantial part, information that an agency has already made public via official announcement is not "useful new information," nor does it "add to the fund of information" available to the citizenry.

Furthermore, public *interest* in an issue – reflected by extensive press coverage – is distinct from public *benefit* resulting from this particular disclosure; the public may remain interested in an issue regardless of whether the disclosure divulges new information pertaining to that issue.  And, in any

event, the Department's voluntary release of a portion of the Attorney General's SF-86 was not the result of this litigation, as discussed *supra* , Part I.d.ii. Thus, the first factor cannot be satisfied by the Sessions Request, because this litigation was not the cause of the voluntary release, and because the information released had already been made public by the agency prior to its discretionary disclosure. *See STS Energy Partners LP*, 214 F. Supp. 3d at 69 ("'The first factor assesses the public benefit derived from the case and requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought.'" (quoting *Davy*, 550 F.3d at 1159)).

### ii.   *Documents Released In Response to The Priebus Request Did Not Benefit the Public.*

With respect to the Priebus Request, American Oversight argues that its request was motivated by an issue that was of public interest—*viz.* "Mr. Priebus's potential interference in the FBI's investigation." Fees Pet. at 13. But even if "Mr. Priebus's potentially improper behavior was the subject of intense public interest," *id.*, it is not sufficient for a request to be motivated by a subject of public interest if it was not reasonably calculated to yield records of use to the public, or did not actually yield such records. In this Circuit, moreover, "the simple disclosure of government documents does not satisfy the public interest factor." *CREW v. U.S. Dep't of Justice I*, 820 F. Supp. 2d 39, 46 (D.D.C. 2011) (citation omitted). Yet American Oversight makes no attempt to argue that the documents released in response to the Priebus Request in fact benefited the public in any way. It does not argue that any media outlet covered any of the documents released in response to that request, just that it posted the records on its own website. *Cf. EPIC v. DHS I.*, 811 F. Supp. 2d 216, 234 (D.D.C. 2011).

American Oversight also asserts that the records "demonstrated that, at least through official channels, the FBI had properly refused to comment on its ongoing investigation and had not obeyed any order from Mr. Priebus to manipulate media outlets for political purposes." Fees Pet. at 14. But American Oversight does not point to any specific records that demonstrate as much. Even had it

done so, this information simply reflects what was already being reported, relying on other sources of information—as American Oversight was well aware. *See* Fees Pet. at 13 n. 5 (citing, e.g., Jim Sciutto et al., *FBI Refused White House Request to Knock Down Recent Trump-Russia Stories*, CNN (Feb. 24, 2017, 12:19 AM), https://www.cnn.com/2017/02/23/politics/fbi-refused-white-house-request-to-knock-down-recent-trump-russia-stories/index.html (reporting that "Comey rejected the request for the FBI to comment on the stories, according to sources, because the alleged communications between Trump associates and Russians known to US intelligence are the subject of an ongoing investigation.")); *cf. CREW v. U.S. Dep't of Justice I*, 820 F. Supp. 2d at 46 (public interest factor met where "[t]he requested documents . . . were not available to the public prior to [plaintiff's] requests").

The court's opinion in *Dorsen* is instructive. There, the court

> acknowledge[d] the public's interest in monitoring how the [defendant agency] conducts its business . . . and, further, that the plaintiff's FOIA request would meet the FOIA's central purpose of providing some public scrutiny of this agency activity. Nevertheless, these public benefits are significantly limited given the particularized nature of the released information. . . . As the defendant points out, the documents confirm a fact as to which there has never been any real issue.

*Dorsen*, 15 F. Supp. 3d at 122 (alterations and citation omitted). The same is true in this case; even if the Priebus Request were motivated by a public interest, the benefit of the request and the lawsuit to the public is negligible where the information released sheds little to no light on the matter of public interest.[4]

### b. Defendants' Conduct in this Matter Has Been More than Reasonable.

Courts in this Circuit have explained that "[s]ince the second and third entitlement factors – the commercial benefit of the request and the nature of the plaintiff's interest – both pertain to

---

[4] Under American Oversight's contrary understanding of the public-benefit prong, any request pegged to "potentially improper behavior" by a public official would satisfy that prong, even if the request – as here – constituted an overbroad fishing expedition that yielded no records reflecting improper behavior. The Court should reject a reading of that prong that would permit advocacy groups like Plaintiff to reap fees for requests (and subsequent lawsuits) not actually designed to produce information that is truly useful to the public.

[Plaintiff's] stakes in the litigation, they are more easily evaluated together." *Dorsen*, 15 F. Supp. 3d at 122 (citation omitted).  And courts typically conclude that non-profit organizations like American Oversight satisfy these two factors.  But even if the Court determines here that these factors weigh in favor of American Oversight, it should find them outweighed by the reasonability of Defendants' conduct and the very limited – if any – public benefit derived from this litigation.  *See CREW v. U.S. Dep't of Justice I*, 820 F. Supp. 2d at 45 (explaining that plaintiff's "status as a nonprofit, public-interest organization does not entitle it to a government-signed blank check for its FOIA-related litigation always and everywhere," and so "the public benefit and the agency's reasonableness must also be considered").

As previously noted, the D.C. Circuit has explained that this fourth factor – the reasonableness of Defendants' unlawful conduct – may be "dispositive." *Dorsen*, 15 F. Supp. 3d at 120-21.  "This factor 'is intended to weed out those cases in which the government was recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Bloomgarden v. U.S. Dep't of Justice*, 253 F. Supp. 3d 166, 173 (D.D.C. 2017) (quoting *Tax Analysts*, 965 F.2d at 1097).  When, by contrast, there is no evidence of obdurate and recalcitrant behavior, and no evidence that the government needlessly prolonged this litigation, the fourth factor weighs heavily against awarding fees.

American Oversight does not argue that any of the redactions on the responses to the Sessions and Priebus Requests were improper, nor does it argue that Defendants' searches were inadequate as to either of these requests.  Nor could it, because Plaintiff has not raised a single substantive challenge to Defendants' handling of its FOIA requests and instead forwent summary judgment briefing altogether.  Instead, American Oversight rests entirely on Defendants' "delay[]" in processing the FOIA requests and on Defendants' "representations and actions before releasing the records responsive to the Sessions FOIA."  Fees Pet. at 17.  Neither of these arguments establish that the Government's conduct was sufficiently unreasonable as to entitle Plaintiff to fees here.

Here, Defendants began processing American Oversight's requests as soon as they were

received, and notified Plaintiff that it had received American Oversight's requests. *Cf. CREW*, 820 F. Supp. 2d at 48 (failure to provide "any response whatsoever" to request was unreasonable). Although Defendants were unable to comply with the statutory deadlines by providing a substantive response within twenty business days, that inability was not the result of obduracy but rather of significant and well-documented administrative backlogs. *See* Hardy Decl. ¶ 15; *see also* June 12 Trans. at 10:19-25 ("The FBI has over 500 requests that have been granted expedited processing. . . [and m]ore than 150 of those requests were granted expedited processing in the last 30 days alone. Many of them were filed by other advocacy groups just like plaintiff's organization.").

Nevertheless, Defendants' conduct before and after the twenty-day deadline evidences a timely and concerted effort to process the requests as quickly as possible: Agency staff had "already begun working on both requests at the time Plaintiff filed suit," even "devlop[ing] a processing strategy for both which was already being implemented" before the Complaint was filed. Hardy Decl. ¶ 14. Expedited processing was granted for both requests before the first hearing in this matter on June 12, mooting two of the four claims asserted in the Complaint. *See* Minute Entry for Proceedings, June 12, 2017. At that time, FBI had already located all records potentially responsive to the Sessions Request and had begun searching for records responsive to the Priebus Request. Hardy Decl. ¶ 14. In the next month, Defendants completed processing of the Sessions Request, and three months later – 45 days ahead of the schedule to which FBI had committed itself – the agency completed processing of the Priebus Request. *See* Joint Status Report of June 28, 2017. Nothing about Defendants' conduct evinces obduracy or recalcitrance in the processing of the two requests at issue here or the production of non-exempt, responsive records. Far from prolonging this litigation, Defendants made every effort to expeditiously and efficaciously process these two requests – one of which sought sensitive information personal to a high-ranking government official[5] and the other of which sought, on its

---

[5] The Court noted that such consultations were appropriate. *See* June 12 Trans. at 8:7-12 ("The Court: I can understand why there would be a need for consultation, and that legal judgments would have to be made. . . . I'm familiar enough with the Justice Department process to understand that

face, an extremely broad range of records in four different categories, requiring four different searches.

Courts in this Circuit have held that "absent any evidence of bad faith, did not 'in and of itself' warrant an award of fees." *EPIC v. FBI I*, 72 F. Supp. 3d 338, 348 (D.D.C. 2014) (quoting *Simon v. United States*, 587 F. Supp. 1029, 1032 (D.D.C. 1984)); *see also United Am. Fin., Inc. v. Potter*, 770 F. Supp. 2d 252 (D.D.C. 2011).  Even where other factors favor entitlement, courts have explained that not all processing delays constitute "unreasonable" agency behavior.  *Cf. EPIC v. FBI I*, 72 F. Supp. 3d at 348-49 (finding the fourth factor neutral where agency "had no further contact with [plaintiff] for six months" after plaintiff narrowed the request, because notwithstanding that delay, there was "no evidence that the FBI acted recalcitrantly or obdurately").  In sum, an agency that did not meet the twenty-day statutory response deadline due to administrative backlogs but otherwise diligently processed Plaintiffs' request has not, absent any showing of bad faith, acted unreasonably.  Because that is the case here, the Court should find that this fourth factor weighs in Defendants' favor.

In its only other attempt to demonstrate that Defendants were "obdurate" or "recalcitrant," American Oversight points to the "confusion" on July 12, 2017, the date on which Defendants' response to the Sessions Request was due.  This confusion, Plaintiff maintains, was engendered by undersigned counsel's provision of changing information regarding the status of the Sessions Request.  Of course, the FOIA does not entitle a requester to any information about what an agency intends to produce or withhold prior to its production deadline, or any information about what time of day on the day a production is due the production will likely be made.  Thus, information provided by undersigned counsel as a courtesy to American Oversight has no bearing on whether its statutory rights were vindicated as a result of this lawsuit.  Indeed, this Court has already recognized as much.  In response to Plaintiff's counsel's statement, at the July 12 hearing, that American Oversight had "significant concerns" about "exactly sort of why things shifted so significantly over the course of the last 24 hours," the Court stated that it was "not sure that's really part of the FOIA case."  July 12

---

there are lots of people who might have to weigh in on the determination with respect to that [production or withholding].").

Trans. at 8:14-23; *see also id.* at 9:1-4 ("Court: . . . But the internal process by which they got to that decision I don't think is relevant to the FOIA case unless it's relevant to a withholding.  Having produced the documents, I'm not sure I see the relevance.").  Later during that same hearing, the Court stated:

> With respect to this Sessions piece of the FOIA request, it sounds to me that the Department of Justice's position is going to be we're not pulling anything.  We conducted a thorough search, and we produced to you everything that is responsive to your request.  We've done so voluntarily, it was a voluntary disclosure.  Even though exemptions may have been applied, we've decided not to rest on this, we've produced it.

*Id.* at 20:17-25.  American Oversight has never argued that FBI's withholding of the record responsive to the first part of the Sessions Request under Exemption 6 was improper as a matter of law.  It cannot, therefore, be unreasonable that Defendants then provided *more access to records* than the FOIA requires by voluntarily releasing portions of the Attorney General's SF-86.

Further, the fact that American Oversight did not know what actions Defendants would take with respect to the Sessions Request during the 24 hours preceding Defendants' deadline does not satisfy this prong of the entitlement inquiry, which is concerned with whether the agency's actions undermined plaintiff's ability to exercise their statutory rights.  American Oversight can point to no provision of the FOIA that mandates that agencies take any action *before* a deadline, nor even any prejudice to American Oversight that resulted from the alleged confusion it suffered.  For these same reasons, the fact that "[a] week before the court-ordered deadline for production of records responsive to the Sessions FOIA . . . Defendants' counsel suggested cancelling a scheduled status call because Defendants had no information to provide . . . other than a general intention to comply with the Court's order," Fees Pet. at 17 (citation omitted), is irrelevant for determining whether Defendants behaved reasonably.  *EPIC v. FBI I*, 72 F. Supp. 3d at 349 (agency need only "show[] a reasonable or colorable basis *in law*" for its conduct (emphasis added)).  Neither the statute nor the Court's order required Defendants to provide interim updates or advance notification of actions the agencies might

27

take; that counsel for the Government sometimes provides such updates as a courtesy to opposing counsel does not render federal agencies "unreasonable" when they opt not to do so.  Nor has American Oversight identified any authority suggesting that counsel's "contradictory representations" about when a production or response would be issued, or about the need for a status call, rise to the level of unreasonable conduct for purposes of the fourth factor.  Accordingly, the "representations" that gave Plaintiffs' counsel heartache do not satisfy the fourth prong of the entitlement inquiry.

### III.     IF THE COURT FINDS THAT AMERICAN OVERSIGHT IS ELIGIBLE FOR AND ENTITLED TO FEES, IT SHOULD AWARD A SIGNIFICANTLY REDUCED AMOUNT

"[I]t is important to note that, even after finding eligibility and entitlement, district courts retain the discretion to modify a fee award based on the reasonableness of the request and the particular facts of the case. . . .  Thus, once a plaintiff successfully surmounts the eligibility hurdle, the fee inquiry becomes highly case specific." *Conservation Force*, 160 F. Supp. 3d at 203; *see also, e.g., Judicial Watch, Inc. v. DOJ*, 878 F.Supp.2d 225, 238-39 (D.D.C. 2012) (examining whether the fees that were incurred were reasonable, even after the plaintiff had demonstrated eligibility and entitlement).  This case-specific task requires the Court to determine (1) whether the attorneys' billing rates are reasonable, and (2) whether the hours expended on various matters in the case are reasonable.  *See, e.g., Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998) (describing the "lodestar" amount as the number of hours reasonably expended multiplied by a reasonable hourly rate).  "The party seeking fees has the . . . burden of establishing the reasonableness of the fees requested." *EPIC v. DHS II*, 218 F. Supp. 3d 27, 38 (D.D.C. 2016).  But "the Court retains discretion to adjust the lodestar amount based on other relevant factors." *Id.* at 47 (citing *Wesiberg*, 745 F.2d at 1499-1500).

Here, American Oversight has claimed a patently unreasonable quantity of hours for work performed in this case—in which there was no substantive briefing or argument, and in which

American Oversight did not succeed in convincing the Court to adopt any one of its oral requests.[6] Accordingly, if the Court finds that Plaintiff is eligible for and entitled to fees, it should substantially reduce any fees award to American Oversight.

### a. Any Fee Award Should Be Discounted for Inefficiencies, Overstaffing, and Other Unreasonable Billing Practices.

American Oversight is the quintessential "repeat player," an organization whose self-described primary purpose is to file FOIA requests and lawsuits. *See* Fees Pet. at 15. It is, therefore, unreasonable that it would claim more than $5,000 in fees merely to draft and file a straightforward FOIA complaint in the district where they have filed more than forty such lawsuits in the last fourteen months.[7] *See* Cafasso Decl., Ex. D (Bill of Fees and Costs) at 1; *id.* at 2-3 (claiming more than ten hours, adjusted, for the drafting and filing of Complaint). Moreover, three attorneys were involved in the drafting of this run-of-the-mill FOIA complaint – Cerissa Cafasso, Sara Creighton, and John Bies – notwithstanding the typicality and generally unremarkable nature of the allegations asserted and claims raised therein. *See EPIC v. FBI II*, 80 F. Supp. 3d 149, 158 (D.D.C. 2015) (rejecting request for over $5,000 in attorneys' fees for time spent drafting and filing Complaint because "[t]he Complaint

---

[6] The Government does not object to the use of the LSI *Laffey* Matrix to supply reasonable hourly rates for this matter. *See EPIC v. DHS II*, 218 F. Supp. 3d at 47-49; *see also Laffey Matrix*, http://www.laffeymatrix.com/see.html. Assuming the veracity of Plaintiff's counsels' representations in their declarations regarding their years of experience, Defendants accept as reasonable the rates utilized in the Bill of Fees and Costs. The Government also does not object to American Oversight's calculation of costs in this matter, totaling $474.04. *See* Bill of Fees and Costs at 7.

[7] Launched in March 2017, American Oversight has filed 43 separate FOIA suits in D.D.C. – the group has a half-dozen such lawsuits before this Court alone. *See* U.S. District Court for the District of Columbia CM-ECF, Query: Plaintiff: "American Oversight," https://ecf.dcd.uscourts.gov/cgi-bin/iquery.pl?111645966442563-L_1_1-0-7361566-pty-pla (last visited July 9, 2018); *see also* American Oversight, *Current Litigation – Enforcing Our Right to Public Information* (June 6, 2018), https://www.americanoversight.org/current-litigation ("American Oversight has filed over 40 lawsuits against the Trump administration—suing to enforce our own requests for information as well as representing other plaintiffs."). Some of these cases involve as many as eighteen separate requests. *See Am. Oversight v. U.S. Dep't of Veterans Affairs*, No. 18-656, 2018 WL 2582793, at *1, *3 (D.D.C. June 2, 2018). The organization's experience with this type of litigation should militate against compensating multiple attorneys for performing multiple hours of work on routine FOIA-litigation tasks.

drafted by [Plaintiff] is a straightforward, nine-page FOIA complaint, similar to the complaints that [Plaintiff] frequently files in FOIA litigation in this Circuit," and therefore did not warrant multiple days of work or multiple attorneys' participation); *EPIC v. DHS I*, 811 F. Supp. 2d at 238 ("conclud[ing] that the plaintiff's request for attorney's fees warrants a reduction due to several instances of duplicative or excessive billing," including, specifically, the fact that two attorneys spent multiple hours drafting and filing complaints even where "both complaints in this case consist largely of boilerplate language and an uncomplicated factual history"); *EPIC v. DHS III*, 197 F. Supp. 3d 290, 296 (D.D.C. 2016) ("[I]t is not apparent that four attorneys were needed. This was a procedurally straightforward FOIA case about one relatively short document.").

Next, American Oversight claims a clearly unreasonable number of hours of preparation for each of the status hearings in this case. For instance, Plaintiff seeks compensation for almost six hours, adjusted, for work done preparing for and attending the June 12, 2017 status hearing—which was an *initial* conference after Defendants' Answer had been filed. The hearing was predominantly an opportunity for Defendants to update the Court as to their processing of Plaintiffs' FOIA requests. As the transcript reveals, *see generally* June 12 Trans., American Oversight offered no new facts and discussed no law at the hearing—which is unsurprising for an initial status conference in a FOIA case. It is hard, therefore, to imagine how six hours of work – performed by two attorneys – could be required to prepare for an initial status conference that lasted less than half an hour. *See* June 12 Trans. at 1, 22:18 (noting that conference began at 2:19 p.m. and adjourned at 2:46 p.m.).

This problem of overbilling for status conferences continues – and worsens – as the litigation progresses. American Oversight claims a shocking 19.59 hours, adjusted, for work done by three attorneys to prepare for and attend the July 13, 2017, status conference in this case. Again, the July status hearing was a standard conference whose goal was to update the Court on the processing of Plaintiffs' requests and discuss a schedule to finish processing those requests. It was not a substantive hearing or argument on a pending motion—in fact, American Oversight did not so much as cite a

single case or discuss any statutory provisions during the July 13th status hearing. It beggars belief that nearly twenty hours of work – by *three* attorneys – could be a reasonable quantity of time to expend in preparation for such a hearing, which lasted just over half an hour. *See* July 13 Trans. at 1, 29 (noting that conference began at 10:07 a.m. and adjourned at 10:43 a.m.). The transcript belies the notion that this status conference was in any way remarkable; indeed, the Court noted that much of the issues American Oversight raised at the conference were "not . . . really part of the FOIA case" at all. July 13 Trans. at 8:22-23. *Cf. EPIC v. DHS III*, 197 F. Supp. 3d at 295-96 (noting, in concluding that plaintiff's billing for numerous status conferences was unreasonable, "[a] FOIA case, however, is fairly straightforward, and its 'status' is easy to discern," and plaintiff should therefore have "blacklin[ed] the bill—*e.g.*, two conferences instead of four, one attorney instead of three[.]"); *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 411 (D.D.C. 2015) ("Nothing about this case is so complex as to require so many hands on deck . . . Overstaffing this case, moreover, led to overbilling.").

The August 14, 2017 status conference is no different; American Oversight bills for time spent "mooting" a standard status conference at which the schedule for the remainder of the productions for the Priebus Request – and nothing else – was to be discussed. Yet that schedule had actually been agreed upon by the parties *before* the status conference in all respects save one. *See* Aug. 14 Trans. at 3:17-4:8 ("Ms. Cafasso: [T]he parties are very, very close to a production schedule. We've agreed to a 90-day production with an interim production at 45 days. . . . And we're just trying to come to agreement about what that interim production will look like."). Further, Plaintiff bills for the work of two attorneys to prepare for this straightforward hearing.

Thus, American Oversight systematically billed excessive numbers of hours for simple tasks attendant to all FOIA litigation – involving little to no complex litigation strategy, substantive expertise, or legal research and argument – and routinely overstaffed these straightforward tasks with multiple attorneys. Plaintiff's contention that this case "presente[ed] complex litigation issues that

were discussed at length in three substantial status hearings and raised novel and complex legal questions regarding the doctrine of official acknowledgement as well as regarding public access to background clearance forms" cannot be squared with the record of what was actually litigated here. *See* Fees Pet. at 22. "[I]nefficiencies in Plaintiff's work" ought not to be rewarded by this Court or compensated from the public fisc. *EPIC v. DHS III*, 197 F. Supp. 3d at 295 (unreasonable to "bill[] for multiple instances of three attorneys' reviewing this Court's one-sentence minute orders . . . sometimes for minute orders scheduling status hearings"); *see also, e.g., Hall & Assocs.*, 2016 WL 10746643, at *7 (downward adjustments to fee award were required where billing record "reveals inefficiencies and redundancies with respect to the post-complaint work performed in this case," such as time spent reviewing and analyzing defendant's Answer "which was only six pages in length and lacked significant substance," or "a senior attorney at the plaintiff firm . . .review[ing]" work "multiple times"); *EPIC v. FBI II*, 80 F. Supp. 3d 1, 5 (D.D.C. 2015) (discounting fees award "to reflect attorney inefficiency and other considerations"). That American Oversight claims to have exercised "significant billing judgment" by reducing its claimed hours from the actual number of hours worked does not make those claimed hours reasonable; rather, it compounds the disbelief that so many attorneys could have spent so many hours working on this simple case. *See* Fees Pet. at 20-21.

Defendants believe that, to reflect these inefficiencies, a minimum of a one-third reduction in fees would be appropriate. *See, e.g., EPIC v. DHS III*, 197 F. Supp. 3d at 296 ("To counteract this overstaffing, the Court will apply to the lodestar—that is, to all of Plaintiff's attorney-fees billing entries—a 35% discount."); *cf. Davis Cty. Solid Waste Mgmt & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 761-62 (D.C. Cir. 1999) (*per curiam*) (reducing award of fees by 50% due to "multiple attorneys performing the same tasks").

### b. Any Fee Award Should Be Discounted to Reflect Plaintiff's Limited Success.

Courts in this Circuit have a longstanding practice of discounting FOIA attorneys' fees to reflect a plaintiff's limited success on the merits. *See, e.g., Judicial Watch, Inc. v. Dep't of Commerce*, 470

F.3d 363, 369 (D.D.C. 2006) (courts must consider plaintiff's "overall success on the merits . . . in determining the reasonableness of a fee award" (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *EPIC v. DHS III*, 197 F. Supp. 3d at 296-97 (reducing by 76% time spent on summary judgment briefing where 76% of the pages of plaintiff's briefs were devoted to claims on which it did not prevail). Here, where two of the four claims in the Complaint were moot by the first status conference; all of the non-exempt responsive records had been produced by Defendants within four months of that first conference; and Plaintiff does not claim that any of the redactions, withholdings, or searches were improper, any award of fees should be significantly reduced to reflect American Oversight's minimal success in this matter. Time spent drafting and filing the Complaint should be reduced by 50% to reflect Plaintiff's lack of success on half of the claims raised therein. *See Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983) (explaining that the limit on awards to "prevailing parties requires that . . . claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim").

Furthermore, every single oral request that American Oversight made to the Court at the status conferences in this case – including, *e.g.*, that FBI produce the Attorney General's SF-86 within fewer than thirty days; that production deadlines be imposed at 5 p.m.; that Defendants commit to processing half of the records responsive to parts 2 and 3 of the Priebus request within forty-five days – was rejected by this Court. Thus, any award for work done in preparation for these status conferences ought to be substantially reduced or altogether eliminated. *See EPIC v. DEA*, 266 F. Supp. 3d 162, 172 (D.D.C. 2017) (denying fees for unsuccessful summary judgment briefing and awarding fees only for the Court's initial order on which plaintiff prevailed); *Judicial Watch*, 878 F. Supp. 2d at 239 (awarding fees for time spent initiating its lawsuit but not for preparing its unsuccessful summary judgment motion). At most, then, American Oversight should be awarded fees for the time spent drafting two of the four counts of the Complaint—not for status hearings that yielded nothing other than the Court's stamp of approval for the production schedule that was already underway. At

a minimum, Defendants believe a 50% reduction in fees overall would be appropriate to reflect the very limited success American Oversight obtained in this lawsuit.[8]

### c. American Oversight is Not Entitled to "Fees on Fees."

Plaintiff has stated that it intends to seek fees for its work to obtain fees in this matter in its Reply brief; it has not yet included an accounting of time for its work done to obtain fees. *See* Fees Pet. at 23-24. As an initial matter, if this Court concludes – as Defendants urge – that American Oversight did not substantially prevail on the merits, it should not award "fees on fees." *See Comm'r, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fail to prevail in such litigation."); *see also EPIC v. FBI II*, 80 F. Supp. 3d at 163 ("The Court finds that . . . a fees-on-fees award would be excessive especially in light of the straightforward, short-term merits litigation and the equally straightforward fees litigation.").

If, however, the court awards fees at all, it should, as courts typically do, "reduce the fees-on-fees award commensurate with reductions to merits fees." *EPIC v. DHS III*, 197 F. Supp. 3d at 297; *see also, e.g., Judicial Watch*, 878 F. Supp. 2d at 241 ("[T]he Court must reduce [Plaintiff's] requested fees on fees award commensurate with the Court's reduction of [Plaintiff's] award for the litigation of this case."). Whatever percentage reduction the Court applies to the merits fees to reflect Plaintiff's limited success should also be applied to any award for fees.

Finally, where the defendant agency "ha[s] no opportunity to contest fees requested for drafting the fees Reply" and, in this case, any of the fees requested for drafting the opening motion for fees, "the Court 'scrutinizes them particularly carefully.'" *EPIC v. DHS III*, 197 F. Supp. 3d at 297 (quoting *EPIC v. FBI I*, 72 F. Supp. 3d at 355).[9] At the same time, should American Oversight

---

[8] This reduction for Plaintiff's limited success on the merits should be *in addition to* the reduction for Plaintiff's inefficiencies and overstaffing—bringing the reduction in fees awarded to 83%. Doing the math, that would yield just over $4,000 ($24,092.94 – ($24,092.94 x .83) = $4,094.86). Adding Plaintiff's stated costs of $474.04 – which Defendants do not contest – produces $4,568.90. In Defendants' view, this is the *maximum* that the Court should award.

[9] Moreover, it is well settled in this Circuit that courts "must also withhold fees on fees 'where the plaintiff needlessly prolongs [the] litigation.'" *EPIC v. DHS III*, 197 F. Supp. 3d at 297 (quoting *Jones ex rel. D.T. v. District of Columbia*, 153 F. Supp. 3d 114, 122 (D.D.C. 2015)). Here, American

continue its pattern of inefficient and unreasonable billing, Defendants reserve the right to seek leave to file a sur-reply to challenge that bill of fees.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that American Oversight's motion for attorneys' fees should be denied or, in the alternative, that any award of fees in this case should be substantially reduced.

Respectfully submitted this 13th day of July, 2018,

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Anjali Motgi*
ANJALI MOTGI
Trial Attorney (TX Bar No. 24092864)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Tel: (202) 305-0879
Fax: (202) 616-8470
Anjali.Motgi@usdoj.gov

*Counsel for Defendants*

---

Oversight's fees petition was filed seven months after the completion of all productions—a delay that exceeds the length of the substantive portion of this litigation itself.