# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN OVERSIGHT,

     *Plaintiff*,

    v.

U.S. DEPARTMENT OF JUSTICE and
FEDERAL BUREAU OF
INVESTIGATION,

     *Defendants*.

Civil Action No. 17-727 (RDM)

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff American Oversight's motion for attorneys' fees. Dkt. 23. In 2017, American Oversight submitted two requests to the Federal Bureau of Investigation ("FBI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking (1) records relating to Attorney General Jeff Sessions's disclosure of any contacts with Russian officials in connection with his security clearance process ("the Sessions request") and (2) documents relating to reported communications between White House Chief of Staff Reince Priebus and the FBI regarding press reports of contacts between Russian nationals and individuals associated with the Trump campaign ("the Priebus request"). Both requests were resolved without any substantive motions practice. American Oversight has now moved for an award of attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E). *See* Dkt. 23. For the reasons explained below, the Court concludes that American Oversight is both eligible and entitled to an award of attorneys' fees. But, in light of the modest amount of work needed to achieve the result that American Oversight sought, its fee request is excessive and must be reduced. The Court will therefore **GRANT** in part and **DENY** in part American Oversight's motion for attorneys' fees.

# I. BACKGROUND

On March 9, 2017, Plaintiff submitted a four-part FOIA request to the FBI seeking "all communications" exchanged between the FBI and then-White House Chief of Staff Reince Priebus, any news media, or any member of Congress or congressional staff regarding reports of "an FBI investigation dating back to summer 2016 into affiliations between then-candidate Donald J. Trump (and his associates) and Russians known to intelligence officials." Dkt. 1 at 5 (Compl. ¶ 26). Less than two weeks later, on March 20, 2017, American Oversight submitted a second request, seeking "[a] copy of the Standard Form 86 (SF-86) form prepared by or on behalf of" then-Attorney General Jeff Sessions "in connection with his security clearance or background investigation for his appointment to the position of United States Attorney General." *Id.* at 7 (Compl. ¶ 36(1)). Plaintiff clarified that it sought "only the information contained in Section 20B.6 of the SF-86 form relating to contacts with any official of the Russian government" and that it had "no objection to the redaction of any other personal information contained in Mr. Session's SF-86 aside from Mr. Sessions's name, the signature line, signature date, and any disclosures regarding contacts with any official of the Russian government." *Id.* That request also sought "[a] copy of any interview notes or summary prepared during the course of Mr. Sessions's background check," again stating that it did not oppose "the redaction of any other personal information regarding Mr. Sessions contained in the background interview notes or summaries aside from any disclosures regarding contacts with any official of the Russian government, the date of the interview, and the name of the interview subject." *Id.* (Compl. ¶ 36(2)). American Oversight requested expedited processing for both the Priebus request and the Sessions request. *Id.* at 5, 7 (Compl. ¶¶ 27, 37). The FBI acknowledged receipt of both, *see*

Dkt. 24-2 at 9, 23, but did not otherwise respond to the requests within the 20-day statutory time period.

On April 19, 2017, Plaintiff initiated this lawsuit, seeking declaratory and injunctive relief requiring the FBI to produce all non-exempt records responsive to both requests. *See* Dkt. 1. (Compl.) Defendants filed an Answer on May 24, 2017, noting that FBI had granted expedited processing of the Priebus request on April 18, 2017, and of the Sessions request on May 4, 2017. Dkt. 8 at 4, 5 (Answer ¶¶ 30, 40). That same day, the Court set an initial status conference for June 12, 2017, "to discuss the schedule for further proceedings in this matter." May 24, 2017 Minute Order.

At the initial conference on June 12, 2017, counsel for Plaintiff agreed that, because the FBI had since granted expedited processing on both requests, Counts I and IV of the Complaint were moot. *See* Dkt. 19 at 2 (June 12, 2017 Hrg. Trans.). The Court then heard from the parties regarding schedules for processing, producing, and potentially challenging both the Priebus and Sessions requests. American Oversight requested that productions related to the Priebus request "begin on a rolling basis on July 12th with final production by August 11th." *Id.* at 3 (June 12, 2017 Hrg. Trans.). Plaintiff further proposed that Defendants split the Sessions request into two separate tracks, completing processing and production of the SF-86 form by June 23, 2017 and producing all remaining non-exempt documents by July 12. *See id.* at 3 (June 12, 2017 Hrg. Trans.). Defendants, in turn, represented that the agency "will have completed all of the searches for the Priebus request within 30 days," or by July 12, and proposed a schedule based on that date. *Id.* at 12 (June 12, 2017 Hrg. Trans.). Counsel further represented that the FBI had located records responsive to Part 1 of the Sessions request—that is, the SF-86 form—and proposed that the agency complete productions on both parts of the request by July 12, 2017. *See id.* at 5, 9

(June 12, 2017 Hrg. Trans.). Following that scheduling conference, the Court ordered that (1) Defendants "shall" produce all non-exempt records responsive to the Sessions Request by July 12; (2) Defendants "shall" complete searches for records responsive to the Priebus Request by July 12; and (3) the parties must appear for a further status conference on July 13, 2017. *See* June 12, 2017 Minute Order.

On July 12, 2017—the date of production ordered by the Court—the parties exchanged multiple emails regarding the timing of the FBI's production of records related to the Sessions request. *See* Dkt. 23-1 at 2–3 (Cafasso Decl. ¶¶ 10–15). Plaintiff's counsel attests that, over the course of the day, the FBI gave "shifting representations" regarding the timing of the forthcoming production and the reasons the records had not yet been produced. *Id.* at 3 (Cafasso Decl. ¶ 14). The FBI ultimately issued its response to the Sessions request that evening, withholding a single page in its entirety pursuant to FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(E). *See* Dkt. 10-1 at 1.

The next morning, however, shortly before the Court's status conference, the FBI, "in consultation with the Attorney General . . . consented to a discretionary release of this record" and voluntarily provided Plaintiff with a copy of the single SF-86 page the agency had withheld. *See* Dkt. 11 at 1. At the status conference later that day, Plaintiff objected to the production of the form without any "identifiable information on it"—specifically, without the page containing Mr. Sessions's name and signature. *See* Dkt. 20 at 5 (July 13, 2017 Hrg. Trans.). Counsel for Defendants responded that they had not produced that page because they "d[id] not read" the original Sessions FOIA request "to ask for a signature page." *Id.* at 13 (July 13, 2017 Hrg. Trans.). Without ruling on the issue, the Court suggested—purely as a matter of efficiency— that Defendants "see if [the signature page] can simply be produced," so that "the issue [could]

go away" without further briefing. *Id.* at 16 (July 13, 2017 Hrg. Trans.). The Court made clear,

however, that should an issue arise regarding the signature page, the Court would resolve it at a

later date. *Id*. (July 13, 2017 Hrg. Trans.). The parties also represented that they would confer to

narrow the Priebus request, which had generated more than 8,300 potentially responsive

documents. *Id.* at 3 (July 13, 2017 Hrg. Trans.). Following the July 13 hearing, the Court issued

a Minute Entry setting a further status conference for August 14, 2017. *See* July 13, 2017,

Minute Entry.

The parties returned to the Court for a final status conference the next month. At that

status conference, Plaintiff confirmed that the Department of Justice had produced the signature

page of the SF-86 form on August 1 and, accordingly, American Oversight "[didn't] see any

additional issues with the Sessions request." Dkt. 21 at 3 (Aug. 14, 2017 Hrg. Trans.).

Plaintiff's counsel also informed the Court that Defendants had produced "four pages responsive

to item number four [of the Priebus request] . . . and [had indicated] that there were no records

responsive to item one" of the Priebus request. *Id.* (Aug. 14, 2017 Hrg. Trans.). Plaintiff further

explained that "the parties [were] very, very close to [agreeing on] a production schedule" with

respect to Parts 2 and 3 of the Priebus request, having "agreed to a 90-day production with an

interim production at 45 days" but with "one remaining issue" for the Court to decide. *Id.* (Aug.

14, 2017 Hrg. Trans.). Plaintiff asked the Court to order that Defendants process and produce

half of the records potentially responsive to the remaining two parts of the Priebus request within

45 days, and Defendants asked that they be allowed to complete an interim production of

unspecified size within 45 days. *Id.* at 4–5 (Aug. 14, 2017 Hrg. Trans.). Following the status

conference, the Court issued a Minute Entry, ordering that Defendants "shall make an interim

production on or before [September 28, 2017], with completion of production by [November 13,

2017]" and that the parties should submit a further status report "by [November 21, 2017], which shall include a joint proposed schedule for briefing, if there are outstanding issues to be resolved." *See* Aug. 14, 2017 Minute Entry.

On September 28, 2017, Defendants produced to Plaintiff all remaining non-exempt records responsive to Parts 2 and 3 of the Priebus request, totaling 239 pages in full or with partial redactions, and a single withheld duplicate page. *See* Dkt. 13. On November 21, 2017, the parties submitted a joint status report informing the Court that no further substantive briefing would be required in this case. *See* Dkt. 14.

Plaintiffs now seek an award of "reasonable attorneys' fees and costs" in the amount of $24,092.94 in attorneys' fees, $8,252.42 in "fees-on-fees," $474.04 in costs, and $295.65 in supplemental costs. Dkt. 25 at 30; *see also* Dkt. 23. As explained below, the Court concludes that American Oversight is both eligible and entitled to an award of attorney's fees. The Court, however, will reduce the total amount of the award that American Oversight seeks, and will therefore GRANT in part and DENY in part its motion for attorneys' fees.

## II. ANALYSIS

Under 5 U.S.C. § 552(a)(4)(E)(i), the Court "may assess . . . reasonable attorney fees and other litigation costs reasonably incurred" by a FOIA plaintiff that "has substantially prevailed." The test for an award of fees "has two components: eligibility and entitlement." *Gerhard v. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 165 (D.D.C. 2017). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation omitted). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* (emphasis in original) (citation omitted). "To obtain

attorneys' fees under FOIA, a plaintiff must satisfy" both prongs of the test. *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). Moreover, if the plaintiff demonstrates that he or she is both eligible for and entitled to fees, he or she must demonstrate that the award sought is "reasonable." *See* 5 U.S.C. § 522(a)(4)(E)(i); *see also Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 197 F. Supp. 3d 290, 293–94 (D.D.C. 2016).

## A.      Eligibility

American Oversight may establish that it "has substantially prevailed" by showing that it "obtained relief through either . . . a judicial order. . . [or] a voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii). The first approach—"a judicial order"— applies to cases in which there is a "judicially sanctioned change in the legal relationship between the parties." *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) ("*Davy I*") (quoting *Edmonds v. FBI*, 417 F.3d 1319, 1322–23 (D.C. Cir. 2005)). The second approach—a voluntary change in position—codifies the so-called "catalyst theory," which asks whether the "litigation substantially caused the requested records to be released." [1] *N.Y.C. Apparel F.Z.E. v. U.S. Customs and Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008) (citations omitted); *see also Brayton*, 641 F.3d at 524–25. Whether faced with claims that a plaintiff prevailed through a judicial order or the catalyst theory, however, "[t]he question of whether a litigant substantially prevailed is one of fact." *Weisberg v. U.S. Dep't of Justice*, 848 F.2d 1265, 1268 (D.C. Cir. 1988), *overruled on other grounds by King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991).

---

[1] In 2001, the Supreme Court held that "the 'catalyst theory' [was] not a permissible basis for the award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress responded with the OPEN Government Act of 2007, which added the catalyst theory as a basis for concluding that a plaintiff has substantially prevailed. *See* 5 U.S.C. 552(a)(4)(E)(ii); *see also Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010).

American Oversight contends that it is eligible for a fee award pursuant to either a judicial order or the catalyst theory. Because the Court agrees that Plaintiff prevailed, at least in part, based on a court order with respect to both the Sessions and Priebus requests, it need not address whether the instant litigation was a catalyst to the production and voluntary disclosure of the records at issue.

Plaintiff points to the Court's minute orders on June 12 and August 14, 2017 as "judicial order[s]" within the meaning of 5 U.S.C. § 552(a)(4)(E)(ii). According to American Oversight, "[t]his Court's orders required Defendants to timely process and produce non-exempt records in response to Plaintiff's FOIA requests by specific dates, and Defendants consequently produced these non-exempt records on the schedule ordered by the Court." Dkt. 23 at 11. The Court agrees.

A FOIA plaintiff "may be considered [a] prevailing part[y]" for purposes of attorneys' fees "if they succeed on any significant issue in litigation [that] achieves some of the benefit [the plaintiff] sought in bringing the suit." *Edmonds*, 417 F.3d at 1326–27 (quoting *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)). Where the "benefit. . . sought" includes the production of records, a judicial order requiring disclosure can qualify as "relief" sufficient for a party to "substantially prevail" under 5 U.S.C. § 552(a)(4)(E)(ii). Indeed, "the D.C. Circuit has at least thrice held that a judicial order requiring disclosure renders a plaintiff eligible for a fee award." *Elec. Privacy Info. Ctr. v. United States Drug Enf't Admin*., 266 F. Supp. 3d 162, 167–68 (D.D.C. 2017).

Defendants' principal argument is that "American Oversight did not 'substantially prevail' within the meaning of the FOIA fees provision" because all of the minute orders entered by the Court "resulted in the Court's approval of the processing schedules Defendants were already employing for both of [American Oversight's] FOIA requests." Dkt. 24 at 13. For

support, Defendants rely on the declaration by David Hardy, Section Chief of the Record/Information Dissemination Section of the FBI, averring that "the FBI had already begun working on both requests at the time Plaintiff filed suit." Dkt. 24-1 at 5 (Hardy Decl. ¶ 14). As a result, Defendants argue, American Oversight "has not demonstrated that, had it simply allowed Defendants to continue processing its request, . . . Defendants would not have completed their processing of the Sessions [r]equest by July 12 and their searches for the Priebus [r]equest by the same date." Dkt. 24 at 16.

As a threshold matter, even if Defendants were already "processing" the records, nothing in the Hardy declaration suggests that the FBI planned to produce the relevant records on the same timeline as the one adopted by the Court, absent this litigation. But, more importantly, Plaintiff could still satisfy the judicial-order requirement by showing that the Court issued an order adopting an existing production schedule. The D.C. Circuit has explained that, once a judicial order requires the "timely production of nonexempt documents" by an agency, any subsequent production "could no longer be described as a voluntary change" in the agency's conduct—and the order thus constitutes a "judicially sanctioned change in the legal relationship between the parties." *Davy I*, 456 F.3d at 166 (internal quotations omitted). In *Davy I*, for example, the parties entered into a joint stipulation agreeing to a mutually acceptable schedule for production, which the court then "memorialized" in an order. *Id.* at 164. The D.C. Circuit explained that, even though the parties had previously consented to the schedule, the court's order constituted a "judicially sanctioned change in the legal relationship between the parties" because, up until the court entered the order, "the [agency] was not under any judicial direction to produce documents by specific dates," but once the court issued the order, the agency was required to comply on pain of contempt. *Id.* at 166. Put differently, "the order memorializing

9

the agreement created the necessary judicial *imprimatur* for plaintiffs to be a prevailing party."

*Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 197 (D.C.

Cir. 2007); *see also Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 368–70 (D.C. Cir. 2008)

(surveying cases reaffirming *Davy I*).

Defendants' contention that the Court "adopted in full DOJ's processing proposal," Dkt.

24 at 15, is therefore "besides the point." *Campaign for Responsible Transplantation*, 511 F.3d

at 197. Regardless of who proposed the schedule, "[o]nce an order has been adopted by the

court, *requiring the agency to release documents*, the legal relationship between the parties

changes." *Id.* (emphasis in original); *see also Citizens for Responsibility & Ethics in Wash. v.*

*U.S. Dep't of Justice*, 820 F. Supp. 2d 39, 44 (D.D.C. 2011) (concluding that whether a

"Scheduling Order adopted the schedule that [Defendants] had proposed (as opposed to

Plaintiff's proposed schedule) . . . is a distinction without a difference.").

Understood in this light, the Court's June 12 and August 14, 2017 minute orders qualify

as "judicial orders" within the meaning of the FOIA fees provision. Like the order in *Davy I*,

this Court's orders "(1) contain[] mandatory language . . . ; (2) [are both] entitled an 'ORDER';

and (3) bear[] the district judge's signature, not those of the parties' counsel," 456 F.3d at 166,

and set concrete dates for production, *see* June 12, 2017 Minute Order ("Defendants shall

produce any responsive documents that are not subject to a FOIA exception or exemption on or

before July 12, 2017.") (Sessions request); Aug. 14 Minute Entry (FBI "shall make an interim

production on or before [September 28, 2017], with completion of production by [November 13,

2017].") (Priebus request). Both orders, accordingly, gave rise to a "judicially sanctioned change

in the legal relationship between the parties" by introducing "judicial direction to produce

documents by specific dates." *Davy I*, 456 F.3d at 166.

Defendants make two additional arguments why American Oversight is ineligible for an award of fees. Neither is availing. *First*, Defendants contend that, although "a scheduling order may be sufficient to satisfy FOIA'[s] eligibility prong[,] . . . [r]ecently . . . courts in this Circuit have held that 'such a court order is a necessary, but not sole criterion for finding that [the plaintiff] is a prevailing party' because the scheduling order alone does not establish that the plaintiff has '*substantially*' prevailed." Dkt. 24 at 16 (emphasis added)). That description of the law in this Circuit is, at a minimum, an overstatement. To be sure, the one case Defendants cite did conclude that a court order was necessary but not sufficient, *see Hall & Assocs. v. U.S. Envtl. Prot. Agency*, 210 F. Supp. 3d 13, 20 (D.D.C. 2016), but, on appeal, the D.C. Circuit declined to affirm on that basis, *see Hall & Assocs. v. Envtl. Prot. Agency*, No. 16-5315, 2018 WL 1896493, at *2 (D.C. Cir. Apr. 9, 2018). [2] Instead, in a per curiam decision, the D.C. Circuit assumed that the plaintiff was, in fact, *eligible* for an award of attorneys' fees, but held that it was not *entitled* to such an award. *Id.* As a result, even this one precedent provides little support for Defendants' contention that "courts in this Circuit" require more than a court order to satisfy the eligibility prong.

*Second*, Defendants argue that Plaintiffs have not "substantially prevailed" with respect to the Priebus request because the Court directed the FBI to "make an interim production on or

---

[2]   Defendants also include a "*cf*" citation to *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012). *Mobley*, however, dealt with the catalyst theory, not a judicial order requiring production. *See id.* at 48. In *Mobley*, moreover, "the plaintiffs received no documents, despite the fact that the defendant processed their request," and the court accordingly rejected the claim that an agreement to simply *process* the FOIA request constituted a unilateral change in the agency's position. *Id.*; *see also Campaign for Responsible Transplantation*, 511 F.3d at 197 (explaining that "[i]n contrast" to an "order . . . requiring the agency to produce records," an order "requiring that a record review be completed in 60 days" is "strictly procedural" and does "not afford judicial relief on the merits of the plaintiff's FOIA claim.").

before [September 28, 2017], with completion of production by [November 13, 2017]." *See* Aug. 14, 2017 Minute Entry. This order was not controlling, in Defendants' view, because "[c]ourts in this Circuit have repeatedly rejected the notion that an order like this one, which 'permit[s] [the agency] to choose between' various options, (here, how much to produce in an interim production), qualifies as judicial relief on the merits." Dkt. 24 at 20 (quoting *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 (D.D.C. 2016) and citing *Barnard v. Dep't of Homeland Sec.*, 656 F. Supp. 2d 91, 99 (D.D.C. 2009)). The two cases that Defendants cite, however, are inapposite: Neither case involved an obligation for the agency to produce records or risk violating a court order. In both *Conservation Force* and *Barnard*, the district court gave the agency a choice between *either* producing the documents at issue *or* withholding the records and producing a *Vaughn* index instead. *See Conservation Force*, 160 F. Supp. 3d at 204; *Barnard*, 656 F. Supp. 2d at 99. "In contrast" to an "order . . . requiring the agency to produce records," an order requiring the preparation of a *Vaughn* index is "strictly procedural" and does "not afford judicial relief on the merits of the plaintiff's FOIA claim." *Campaign for Responsible Transplantation*, 511 F.3d at 197. Both C*onservation Force* and *Barnard* expressly turned on this distinction, holding that the plaintiff did not "substantially prevail" because the agency could "refuse[ ] to disclose a single document or datum" without violating the court's order. *Barnard*, 656 F. Supp. 2d at 99; *see also Conservation Force*, 160 F. Supp. 3d at 204 (quoting *Summers v. Dep't of Justice*, 569 F.3d 500, 505 (D.C. Cir. 2009)).

The same principle does not apply here; to the contrary, this Court's August 14, 2017 Minute Order bound the FBI to produce at least some responsive records by the interim date and to produce all of the non-exempt records by a later date. Because the FBI would have violated the Court's directive had it "refused to disclose a single document or datum" on the earlier date,

*Summers*, 569 F.3d at 505, and because the FBI was required to complete its production by the later date, neither *Conservation Force* nor *Barnard* bear on the present dispute. Indeed, this Court's August 14 order—requiring Defendants to make productions of non-exempt records over multiple dates—is largely identical to the order at issue in *Davy I*. *See* 456 F.3d at 164; *see also Davy v. CIA*, No. 00–cv–2134, Dkt. 22 (D.D.C. filed May 17, 2001) ("[T]he CIA . . . will provide plaintiff all responsive documents, if any, to his 2000 FOIA request . . . [a]s soo[n] as possible after [May 31, 2001], but in no case later than [July 13, 2001].")

Because the Court required the FBI to produce non-exempt documents relevant to both the Sessions request and the Priebus request by set dates, the Court concludes that Plaintiff "obtained relief through . . . a judicial order," and American Oversight is, accordingly, eligible for an award of attorneys' fees. 5 U.S.C. § 552(a)(4)(E)(ii). The Court now turns to whether American Oversight is entitled to such an award.

## B.      Entitlement

The Court's conclusion that American Oversight is eligible for fees "does not end the inquiry—the Court must still decide whether [the plaintiff] is entitled to [fees]." *Gerhard*, 258 F. Supp. 3d at 167; *see also Brayton*, 641 F.3d at 525. Under the entitlement prong, the Court must weigh four factors: "'(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding' of the requested documents." *McKinley*, 739 F.3d at 711 (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)). "[T]he first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) ("*Davy II*"). The fourth factor, in contrast, considers whether

the agency's position "had a reasonable basis in law," *Tax Analysts,* 965 F.2d at 1096, and asks

whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in

obdurate behavior," *McKinley*, 739 F.3d at 712 (internal citations omitted).

When considering these factors, "courts must remain cognizant of the purposes of

FOIA's attorney fee provision." *Wadelton v. Dep't of State*, No. 13-CV-412, 2018 WL 4705793,

at *4 (D.D.C. Sept. 30, 2018). The provision exists to "remove the incentive" for agencies to

deny FOIA requests based on "the knowledge that many FOIA plaintiffs do not have the

financial resources or economic incentives to pursue their requests through expensive litigation"

rather than on "the merits of exemption claims." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559

F.2d 704, 711 (D.C. Cir. 1977). Although the fee provision was not enacted to "reward . . . any

litigant who successfully forces the government to disclose information it wished to withhold,"

*id.*, a "grudging application of th[e] provision, which would dissuade those who have been

denied information from invoking their right to judicial review, would be clearly contrary to

congressional intent," *id.* at 715. The four-factor framework is ultimately "a heuristic, a

somewhat crude mechanism for testing whether fees in a particular case are consistent with the

purposes for which Congress subsidized FOIA litigation." *Davy II*, 550 F.3d at 1166 (Tatel, J.,

concurring).

1.       *Public Benefit*

The first factor—"the public benefit derived from the case," *Tax Analysts*, 965 F.2d at

1093—weighs in favor of an award for American Oversight. Although FOIA is premised on the

notion that the release of government records is necessary to shed light on the workings of

government, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978), "Congress did not

have this sort of broadly defined benefit in mind . . . in enacting" the FOIA fees provision,

*Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979); *see also Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). Rather, the Court must consider whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton*, 63 F.3d at 1120 (citations omitted). American Oversight's FOIA requests satisfy this standard.

The question whether Attorney General Sessions listed any contacts with Russian government officials on his SF-86 form was a matter of substantial interest in the media, and the release of his SF-86 was the focus of extensive reporting. American Oversight, for example, points to nineteen news reports relating to the release of the relevant portion of the form. Dkt. 23 at 14–16. Defendants, for their part, do not dispute that the question whether Attorney General Sessions had reported any contacts with Russian government officials was a matter of substantial public interest. But they contend that the release of the SF-86 form did not benefit the public because the Department of Justice "had already made a public, official statement about . . . 'what was actually included or not in the SF-86 on that issue[.]'" Dkt. 24 at 27 (quoting June 12, 2017 Tr.). Defendants then point to a May 25, 2017 statement from the Department of Justice spokesperson, "explaining that '[i]n filling out the SF-86 form, the Attorney General's staff . . . was instructed not to list meetings with foreign dignitaries and their staff connected with his Senate activities.'" *Id.* at 28 (citation omitted).

Defendants' rejoinder fails for two reasons. First, American Oversight served its FOIA request seeking release of the SF-86 on March 20, 2017 and brought the present lawsuit on April 19, 2017—both weeks before the Department spokesperson explained on May 25, 2017 that Attorney General Sessions's staff had been advised not to include meetings with foreign dignitaries connected with his Senate activities. As a result, although the press statement was not

required by court order, American Oversight can plausibly maintain that its FOIA request played

a role in prompting the Department publicly to address the contents of the SF-86. Second, as the

public reporting demonstrates, the public interest in the contents of the SF-86 did not fade after

May 25, 2017.

The question whether the FBI was persuaded by White House Chief of Staff Priebus "to

push back against news stories about contacts between Trump aides and Russians during the

presidential campaign," *see, e.g*., Ken Dilanian & Kristen Welker, *Trump Aide Reince Priebus

Asked FBI to Knock Down Russia Stories*, NBC News (Feb. 24, 2017, 12:09 PM),

https://www.nbcnews.com/news/us-news/trump-aide-reince-priebusasked-fbi-knock-down-

russia-stories-n725261, was also an issue of substantial public interest. Dkt. 23 at 17 & n.5

(listing press reports). Again, Defendants do not dispute that the topic was one that might have

been of public interest. But they note that American Oversight's FOIA request failed to yield

any records of public interest.

This contention also fails for two reasons. First, the absence of evidence that the FBI

commented on the press reports about Russian contacts at the behest of the White House Chief of

Staff is itself a matter of public interest. The fact that the press had previously reported that the

"FBI rejected a recent White House request to publicly knock down media reports about

communications between Donald Trump's associates and Russians known to US intelligence

during the 2016 presidential campaign," Jim Sciutto et al., *FBI Refused White House Request to

Knock Down Recent Trump-Russia Stories*, CNN (Feb. 24, 2017, 12:19 AM),

http://www.cnn.com/2017/02/23/politics/fbi-refused-white-house-request-to-knock-down-recent-

trump-russia-stories/, moreover, is beside the point. American Oversight sought to confirm the

accuracy of that statement, and the fact that it found no contrary evidence was itself of public

value.  Second, the D.C. Circuit has held that courts must assess the potential public value of information sought under FOIA, as opposed to the public value information that is actually disclosed.  As the Court of Appeals admonished in *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016): "Lest there be any uncertainty, we clarify that the public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest."  *See also Davy II*, 550 F.3d at 1162 n.3.  Viewed at the time it was submitted, the Priebus request sought information of substantial public value.

Factor one, accordingly, weighs in favor of an award of attorneys' fees.

2.      *Commercial Benefit and Nature of the Plaintiff's Interest*

Factors two and three are "often combined . . . into a single factor assessing whether a plaintiff 'ha[d] sufficient private incentive to seek disclosure' of the documents without expecting to be compensated."  *McKinley*, 739 F.3d at 711 (quoting *Davy II*, 550 F.3d at 1160).  In cases in which the claimant may obtain a "commercial benefit" or has some other "personal interest in pursuing litigation, 'an award of fees is generally inappropriate' because the claimant has sufficient motivation to bring suit without the promise of attorneys' fees."  *Nat'l Sec. Counselors*, 2017 WL 5633091, at *13 (quoting *Fenster*, 617 F.2d at 743); *see also Cotton*, 63 F.3d at 1120 ("When a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate.").

American Oversight is a non-profit with a "mission of promoting government transparency and accountability," Dkt. 23 at 7, and the government does not contest that these factors weigh in favor of the Plaintiff, *see* Dkt. 24 at 31 ("[C]ourts typically conclude that non-profit organizations like American Oversight satisfy these two factors").  The Court agrees.

3.      *Reasonableness of the FBI's Position*

The fourth and final factor "evaluates why the agency initially withheld the records." *Morley v. CIA*, 894 F.3d at 392.   It requires the Court to evaluate whether the FBI "had a reasonable basis in law" for opposing disclosure and whether the Defendants were "recalcitrant in [their] opposition to a valid claim or otherwise engaged in obdurate behavior."  *McKinley*, 739 F.3d at 712 (internal citations omitted).   "The question is not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit."  *Davy II*, 550 F.3d at 1163; *see also Am. Immigration Council v. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 407 (D.D.C. 2015); *Judicial Watch, Inc. v. Dep't of Justice*, 878 F. Supp. 2d 225, 237 (D.D.C. 2012).   "If the Government's position" in declining to release the records at issue is "correct as a matter of law, that will be dispositive.  If the Government's position is founded on a colorable basis in law," however, "that will be weighed along with other relevant considerations in the entitlement calculus."  *Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993).

This case presents an unusual context to assess how the fourth factor weighs in the balance because the parties never engaged in any substantive motions practice regarding the FOIA requests.  But that does not fully answer the question whether the FBI had a reasonable basis in law for failing to act on American Oversight's request for expedited processing within the 10-day deadline, *see* 28 C.F.R. § 16.5(e)(4), for not releasing any of the responsive records until almost four months after American Oversight submitted its requests, and for not completing its production for over six months, despite having recognized that expedited treatment was warranted.  The relevant question, accordingly, is not whether FBI had a "correct" or even

"colorable basis in law" for withholding or redacting the records, but whether the FBI's "administrative backlog is a reasonable basis for withholding documents responsive to a FOIA request." *Reyes v. NARA*, 356 F. Supp. 3d 155, 167 (D.D.C. 2018).

As Judge Kollar-Kotelly observed in the *Reyes* case, "[t]here is no[] clear circuit precedent addressing th[is] issue." *Id.* To be sure, the D.C. Circuit recognized in *Morley v. CIA*, that agency's miss the "initial 20-day statutory deadline for responding to [a] FOIA request" in the "vast number of" cases and that "some delay past the 20-day mark is not necessarily so unreasonable in and of itself as to *require* an award of attorney's fees to an ultimately prevailing plaintiff." 894 F.3d at 393. *Morley* is not controlling, however, for several reasons.

First, although American Oversight contends that the FBI missed the 20-day deadline, which was the deadline at issue in *Morley*, the FBI was just a day late, and thus that foot fault does not play a meaningful role in the Court's analysis. Second, *Morley* did not hold that a delay in responding to a FOIA request or in releasing records should have no bearing on a court's decision whether to award fees, only that missing "the 20-day mark" does not invariably "require" that the court award fees. 894 F.3d at 393 (emphasis omitted). Third, the Court must consider the delay at issue in light of "the purposes behind the fourth factor," which "is meant to 'incentiviz[e] the government to promptly turn over—before litigation is required—any documents that it ought not withhold.'" *Reyes*, 356 F. Supp. 3d at 168 (quoting *Davy II*, 550 F.3d at 1166). That consideration, moreover, bears special emphasis in the present context, where the FBI eventually agreed that expedited processing was warranted because the requests touched on matters "of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence," Dkt. 24-2 at 12, 26, but missed the deadline for even making that preliminary determination by a month or more as to

both requests. Dkt. 8 at 4, 5 (Answer ¶¶ 30, 40). Finally, even after granting expedited processing, the FBI took over two months to release the portion of the SF-86 that American Oversight sought, *see* Dkt. 10, it and took over five months to complete the Priebus request productions, *see* Dkt 13 .

The Court is cognizant that the Department "voluntarily" released the portion of the SF-86 at issue and that the Court never held that the release was required by FOIA. For present purposes, however, the Court has not been asked—and it would not constitute a prudent use of judicial resources—to adjudicate the merits of a claim that was mooted by the Department's agreement to produce the record. *See, e.g.*, *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The determination of fees 'should not result in a second major litigation.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Instead, the relevant question is whether the delays in releasing the SF-86 and the Priebus records were justified. As the Court previously explained, it is not surprising that it would take some time for senior Department officials to consider, and to decide, whether to release the form. That does not explain, however, the delay in releasing the records responsive to the Priebus request, and it does not explain why the FBI took a month to decide even whether expedited processing of either request was warranted.

In sum, this is not a case in which fees are unavailable because the government's position was "correct as a matter of law," *Chesapeake Bay Found., Inc.*, 11 F.3d at 216, nor it a case in which the government acted in bad faith or in a defiant or intractable manner. The reasonableness of the FBI's actions, moreover, must be assessed in light of the fees that American Oversight seeks. The organization does not—and cannot—seek fees for opposing litigation positions taken by Defendants without a colorable basis in law. Rather, it seeks fees for the cost of bringing suit and then pressing the Department to release records of potential

national importance as promptly as possible.  With respect to that narrow issue—the need for

expedition—the FBI's position was neither "so unreasonable in and of itself to require an award

of attorney's fees," *Morley*, 894 F.3d at 393 (emphasis omitted), nor was it so well-grounded in

law or practice that it either precludes the award of fees, *Chesapeake Bay Found., Inc.*, 11 F.3d

at 216.  As a result, the fourth factor does not affirmatively support Defendants' position that

American Oversight is not entitled to an award of fees, but, at the same time, it weighs, if at all,

only modestly in favor of American Oversight's claim to fees.

*          *          *

None of the four entitlement factors "is dispositive."  *Davy II*, 550 F.3d at 1159.  Here,

however, the first three factors tip decidedly in favor of awarding fees in favor of American

Oversight, and the fourth factor tips, if at all, slightly in the same direction.  On balance, the

Court concludes that this is the type of case that would "dissuade" a FOIA applicant "who ha[s]

been denied information from invoking [her] right to judicial review"  and is "necessary to

implement the FOIA. " *Id.* at 1158 (quoting *Nationwide Bldg. Maint., Inc.,* 559 F.2d at 715).

Accordingly, American Oversight is both eligible and entitled to an award of fees and costs

pursuant to 5 U.S.C. § 552(a)(4)(E).

## C.     Reasonableness of Award

Having concluded that American Oversight is entitled to an award of fees, the Court

must, in an exercise of its "traditional equitable discretion," determine the appropriate amount.

*Fenster*, 617 F.2d at 742.  The "usual method of calculating reasonable attorney's fees is to

multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing

the 'lodestar' amount."  *Bd. of Trs. of Hotel and Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794,

801 (D.C. Cir. 1998).  "The party seeking fees has the . . . burden of establishing the

21

reasonableness of the fees requested" and must do so for "both the number of hours and the hourly rate." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 218 F. Supp. 3d at 37, 48 (D.D.C. 2016). Any supporting documentation "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended," *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (internal quotations omitted), typically in the form of "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney," *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Even if a party submits detailed, standardized records, however, the Court "retains discretion to adjust the lodestar amount based on other relevant factors," *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 218 F. Supp. 3d at 47 (citing *Weisberg*, 745 F.2d at 1499–1500).

American Oversight seeks "reasonable attorneys' fees and costs" in the amount of $24,092.94 in attorneys' fees, $8,252.42 in "fees-on-fees," and $769.69 in costs. Dkt. 25 at 30. In support, Plaintiff has submitted a "Bill of Fees and Costs," Dkt. 23-1 at 20, based on the LSI-*Laffey* Matrix. Dkt. 23 at 26; *see generally Eley v. D.C*., 793 F.3d 97, 100–02 (D.C. Cir. 2015). American Oversight has also submitted declarations from each of its attorneys averring that their proposed billing rates represent fair-market rates for each based on his or her relevant experience. *See* Dkt. 23-1 (Cafasso Decl.); Dkt. 23-2 (Bies Decl.); Dkt. 23-3 (Creighton Decl.); Dkt. 23-4 (Evers Decl.). Defendants do not challenge the use of the LSI-*Laffey* Matrix, and "accept as reasonable the rates utilized in the Bill of Fees and Costs" based on each attorney's experience. Dkt. 24 at 36 n. 6. The Court, accordingly, will accept American Oversight's proposed billing rates as reasonable.

Defendants do, however, take issue with American Oversight's fee petition on three grounds: First, they contend that American Oversight's request for fees is unreasonable due to overstaffing and inefficiencies. Dkt. 24 at 36. Second, they argue that any award should be discounted to reflect "plaintiff's limited success on the merits." *Id*. at 39. And, finally, they argue that Plaintiff is not entitled to "fees on fees." *Id.* at 41. The Court will address these in turn before calculating the final award.

1. *Overbilling and Overstaffing*

"It is axiomatic that 'trial courts need not, and indeed should not, become green-eyeshade accountants' in examining fee requests since '[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.'" *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 235 (D.D.C. 2015) (quoting *Fox*, 563 U.S. at 838). The Court therefore need not—and should not—scrutinize every billing entry. The Court will, however, address American Oversight's fee request, and Defendants' objections, in broad strokes.

Defendants first argue that American Oversight "systematically billed excessive numbers of hours for simple tasks attendant to all FOIA litigation—involving little to no complex litigation strategy, substantive expertise, or legal research and argument—and routinely overstaffed these straightforward tasks with multiple attorneys." Dkt. 24 at 38. As a result, Defendants urge the Court to apply "a minimum of a one-third reduction in fees." *Id.* at 39. The Court agrees that a one-third reduction is warranted.

Defendants first contend that American Oversight overstaffed the matter when it assigned three lawyers to assist in preparing the complaint, and they argue that American Oversight's claim for $5,324.30 for the cost of preparing the complaint is unreasonable. *Id.* at 36. The Court, however, disagrees. As American Oversight indicates, it reduced the hours for which it is

seeking reimbursement of its own accord. Dkt. 23-1 at 21–25. As a result, even though Defendants are correct that three lawyers are not required to prepare a routine FIOA complaint, *see, e.g.*, *Elec. Privacy Info. Ctr v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 158 (D.D.C. 2015), American Oversight has already accounted for that fact by reducing the hours claimed for all three lawyers. Portions of the time attributed to preparing the complaint, moreover, included filing the complaint and preparing and filing the affidavit of service. Reviewing time records, of course, is not a precise science, but fees of slightly over $5,000—at billing rates of between $440 and $717 per hour—for preparing, filing, and serving a complaint appear reasonable.

The Court is unpersuaded, however, that attorneys' fees of almost $20,000 for attending three status conferences and conferring with opposing counsel is reasonable. The Court recognizes that American Oversight, once again, reduced the number of hours for which it is seeking fees of its own accord. But, even with that reduction, American Oversight's fee request includes some overstaffing and unnecessary efforts. American Oversight's time records, for example, reflect numerous conferences among American Oversight lawyers about the status of Defendants' production, preparation for the status conferences, and debriefings about the status conferences. They also reflect "moots" for the status conferences and the attendance of two attorneys at a status hearing on one occasion. *See* Dkt. 23-1 at 25.

Extensive preparation is, of course, a good thing. But Defendants should not be required to foot the bill for preparation above and beyond what was reasonably necessary. Even assuming that American Oversight required four hours preparation to attend each of the three status conferences, each lasting no more than an hour including travel time, and assuming an average billing rate of $600 (the lead lawyer on the matter billed her time at $440), reasonable attorneys'

fees for the three status conferences would amount to only $9,000.  If the Court then adds to that

amount the $5,324.30 in fees incurred in preparing and filing the complaint, and adds another

$1,250 for reviewing and analyzing the FBI's responses to the Priebus request, (American

Oversight seeks $1,276.32, *see id.*)  the total fees should amount to less than $16,000—or

approximately two-thirds of the amount claimed.

The Court will therefore discount the fee award by one-third to address overstaffing.

2.    *Success on the Merits*

Defendants also argue that "a 50% reduction in fees overall would be appropriate to

reflect the very limited success American Oversight obtained in this lawsuit."  Dkt. 24 at 40–41.

This reduction is, according to Defendants, appropriate "*in addition to* the reduction for

Plaintiff's inefficiencies and overstaffing."  *Id.* at 41 n. 5.  They contend that this reduction is

warranted because "every single oral request that American Oversight made to the Court at the

status conferences in this case . . . was rejected by this Court."  *Id.* at 40.

The government is correct that "[a] plaintiff's overall success on the merits also must be

considered in determining the reasonableness of a fee award."  *Judicial Watch, Inc. v. U.S. Dep't

of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006).  The Court is unpersuaded, however, that

American Oversight suffered the litigation setbacks that Defendants posit.  As discussed at

greater length above, American Oversight succeeded in obtaining judicial orders that ensured

that the FBI would expeditiously respond to their FOIA requests.  The fact that the Court did not

adopt the specific scheduled proposed by American Oversight at the status conferences does not

substantially undercut that victory.  In one sense, the Court agrees that American Oversight's

victory was limited: American Oversight did not obtain a court order compelling the FBI to

release records that it had decided to withhold.  But that limitation is already reflected in the fees

that American Oversight is requesting.  It is not, for example, seeking fees for substantive motions practice.

The Court, accordingly, concludes that the fee award should not be reduced based on the results that American Oversight achieved.

      3.     *Fees on Fees*

Finally, Defendants briefly argue that American Oversight should not be awarded "fees on fees," or, at the very least the Court should discount that fee award by "[w]hatever percentage reduction the Court applies to the merits fees."  Dkt. 24 at 41.  Given that American Oversight prevailed in this case and has prevailed at least in part on its fees petition, the Court sees no basis to depart from the "settled" rule in this circuit that  "[h]ours reasonably devoted to a request for fees are compensable."  *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985).  American Oversight represents that it has written off the majority of the hours spent on its fees petition and that it seeks payment for only 19.54 hours out of a possible 65.14.  Having reviewed the lodestar, Dkt. 25-1 at 14–18, the Court concludes that the requested award for fees on fees of $8,252.42 is a reasonable sum.

Defendants further argue, however, that the Court should "'reduce the fees-on-fees award commensurate with reductions to merits fees.'"  Dkt. 24 at 41 (quoting *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 197 F. Supp. 3d at 297).  Because American Oversight does not join issue with this statement of the law, Dkt. 25 at 30, and because the Supreme Court has cautioned that "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation,"  *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n. 10 (1990), the Court will apply the same one-third reduction to American Oversight's request for "fees on fees" that it

will apply to American Oversight's principal fees petition. *See Elec. Privacy Info. Ctr v. Fed. Bureau of Investigation*, 80 F. Supp. 3d at 163.

## CONCLUSION

For the reasons presented above, American Oversight's motion for an award of attorneys' fees and costs, Dkt. 23, is hereby **GRANTED** in part and **DENIED** in part.  Plaintiff is entitled to reasonable attorneys' fees and costs in the amount of $16,061.96 in attorneys' fees, $5,501.61 in fees-on-fees, $769.69 in costs.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 25, 2019